EXHIBIT C

*Fleet Financial Grou*



## FORMAL COUNSEL

To:
Employee Name: *Linda Ungerleider*
Branch/Dept.: *Shelton - 0264*     Title: *Mortgage Specialist*

Please check appropriate step:     ☑ Counsel - Step #2     ☐ Reprimand - Step #3

| Manager completes this section indicating current incident(s). | Reason for Formal Counsel/Reprimand: *Linda had a confrontation with Richard Evans of the training department on 5/22/97. The incident occurred at the Orange CT office of Fleet Bank in front of customers and staff. The incident involved shouting and verbal abuse regarding Richard and frustration with her laptop computer. (See attached memo from Richard Evans.)* |
|---|---|
| | Manager's signature: *Kevin Moran*     Date: *5/23/97* |

| Manager lists previous discussions regarding similar incident(s). | Manager: *Kevin Moran*     Date: *5/23/97*<br>Incident: *Linda was given a rating of 2 on her last performance review in the category of work relations as she has difficulty in keeping her interpersonal communication with the SSC on a professional level. Linda refused to sign the review, and stormed out of my office screaming and crying.* |
|---|---|
| | Manager: *(Cont)*     Date: _____<br>Incident: *Linda's comments regarding this are attached to the formal review.* |

Your performance must show immediate and sustained improvement or further action will be taken which could include termination of your employment.
*********************************************************************

I acknowledge that the above information has been discussed with me.

Employee signature: *Employee Needs did not sign*     Date: _____

My comments are as follows: (please continue on a separate sheet if necessary)

Please see over for Action Plan
FMG 00317

*Fleet Financial Group*

# DEVELOPMENTAL ACTION PLAN

**Manager – Detail below the specific action(s) to be taken for improved performance:**

Action(s):

1.) Reduce the number of assigned bank branches temporarily to four. To provide a manageable level of activity to handle both customer demands and those related to our technology deployment.

2.) No further such outbursts with fellow employees.

3.) A significant improvement in level of cooperation with management and ASC to resolve any issues around use of office automation and Compass deployment.

Employee comments: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The above action plan has been fully discussed with me. I understand that failure to show immediate and sustained improvement will necessitate further action up to and including termination of my employment.

Employee signature: _____    Date: _____

**PLEASE RETURN THIS FORM TO YOUR LOCAL HUMAN RESOURCES DEPARTMENT**

Note to File:

Discussed formal counsel with Linda
Ungerleider dated 5/23/97. Linda
did not sign.

FMG 00319

Exhibit D

Moran, Kevin A.

From:        Evans, Richard D.
To:          Bowen, Candi; Moran, Kevin A.; Sequeira, Laurian; Clifford, Marguerite R.
Cc:          Frazza, John F.
Subject:     Linda Ungerleider
Date:        Thursday, May 22, 1997 3:29PM
Priority:    High

I went out to Linda's bank branch office to meet with her and to determine if there is a hardware problem.

Linda was in an appointment when I arrived, so I checked to see if Linda's security card was working when she dialed in. I was able to sign on without a hitch.

When Linda was through with the appointment, I had her start up the computer and sign on. Linda was able to sign on without any problem. She did each step correctly without my assistance.

The next item that Linda wanted to work through was relocking an expired loan. I asked her to take me step by step what she should do to relock this loan. She went to Alt. Price but had failed to mark the off sheet pricing tab.

After we corrected that, I asked Linda what her next step would be and she replied, with hitting Save. I trained her that she should not Save but Save and Register. She didn't know to do that. After a discussion on why to Save and Register, the loan validated without any critical messages.

At this point Linda went on the phone and was unable to spend more time with me. This wouldn't be much of a problem except Linda didn't bring a power cord with her and the laptop had very little battery juice left. I informed Linda that if the laptop ran out of power, I could not help her any further with the issues she was having. I also told her that all I needed was five more minutes, if that, to complete the issue that she had.

At this point, Linda through a fit in the middle of a bank branch on me and started yelling that she was "going to resign", "I quit", "I can't handle this anymore" and other comments as well. All of which took place with a bank branch full of people. She also told the customer that was on the phone "to go to another bank". All of the comments were heard by everyone.

Linda claims that I rudely pulled her off a phone call/application. I simply went to the desk she was using, she asked the customer to hold and I told her about the lack of power her computer had to finish the training that we had started. I did this quietly and had respect for the fact that Linda had a customer on the phone. Linda didn't have a power source with her and my power source doesn't work on her laptop.

I did nothing to warrant the tirade and fit that Linda threw when I informed her that I likely couldn't take her to the final step to register the loan. Linda had no respect towards being in a bank branch with customers and employees.

During the tirade, Linda called Susan Johnson and Kevin Moran and gave both people erroneous information on what took place. For example, I said to Linda to put the customer on hold while she was yelling at me. This has turned this around to say that I made her hang up with the customer. She also said that I was unwilling to help her take the 9 off her dialing in. I continually tried to tell Linda that if I could power her laptop back up after she unproperly shut it down I would remove the 9.

Linda also implied loudly that her manager didn't know what he was doing and shouldn't be in his position.

Before I left the bank branch, I seeked out the bank branch manager to apologize for the disruption that had taken place.

I would love to help Linda out and previous to today I have had success with working with Linda. Based on what happened today, I am at a loss on how to further work with her if it is possible.

I can be contacted at 860-657-1078 or pager 1-888-535-9100.

Page 1

FMG 00076

Exhibit E

**Fleet**

## Performance Appraisal

At Fleet, we need to rely on every employee - to strive for peak performance. Everyone has the opportunity to make a significant contribution to his or her own future - and the future of the entire organization.

| Name | Social Security # |
|---|---|
| Linda Ungerleider | 147426070 |
| Department | Job Title |
| Shelton CT - 0264 | Mortgage Specialist |
| Supervisor | Rating Period |
| Kevin Moran | 1/97-12/97 |

## Job Accountabilities

In priority order, list the major job accountabilities and goals set during the previous review.
Indicate the appropriate performance rating:  5 - Outstanding Contributor, 4 - Exceeds Expectations,
3 - Meets Expectations, 2 - Needs Improvement, 1 - Does Not Meet Expectations

| | PERFORMANCE RATING | | | | |
|---|---|---|---|---|---|
| | 5 | 4 | 3 | 2 | 1 |
| 1.  Production - Originate loans for FMG at a level sufficient to meet personal goals and contribute to overall sales goals of the Shelton office. | ☐ | X☐ | ☐ | ☐ | ☐ |
| 2. Branch Coverage - Provide coverage for assigned Fleet Bank branches.  Respond to all bank referrals in a timely manner maximizing sales and cross-sell.  Maintain clear and accurate communication with branches as to result and status of referrals. | ☐ | X☐ | ☐ | ☐ | ☐ |
| 3. Customer Service - Consistently provide the highest level of customer service to both external and internal customers.  This includes prompt follow-up on all referrals, clear communication to all interested parties, timely response on all documentation requests. | ☐ | X☐ | ☐ | ☐ | ☐ |
| 4. Compliance - Fully support and adhere to all FMG regulatory and compliance policies and procedures. | ☐ | ☐ | X☐ | ☐ | ☐ |
| 5. CRA - Fully endorse and support FMG corporate CRA goals and objectives. | ☐ | ☐ | X☐ | ☐ | ☐ |
| 6. | ☐ | ☐ | ☐ | ☐ | ☐ |

## Comments

Linda closed 72 units for $7 million in 1997.  Linda's efforts in 1997 were focused on branch coverage as for most of the year she was an inside mortgage specialist.  Linda developed a strong relationship with her assigned branches and a very good reputation for follow-up on referred business and feedback to her business partners in the branches.  Linda has continued to show improvement in her overall level of product knowledge.

12/96

**FMG 00308**

## Other Performance Factors

Indicate the appropriate performance rating:  5 - Outstanding Contributor, 4 - Exceeds Expectations,
3 - Meets Expectations, 2 - Needs Improvement, 1 - Does Not Meet Expectations

| | Performance Rating | | | | |
|---|---|---|---|---|---|
| | 5 | 4 | 3 | 2 | 1 |
| **Audit/Compliance/Legal.** Takes initiative to comply with legal requirements and audit, regulatory and internal compliance guidelines. Responds quickly to correct regulatory, audit and compliance deficiencies. Adheres to Fleet's Code of Ethics. | ☐ | ☐ | X | ☐ | ☐ |
| **Communications.** Presents ideas clearly and concisely in written and oral form. Open and direct. Listens attentively. Keeps management informed as appropriate. | ☐ | ☐ | X | ☐ | ☐ |
| **Customer Service.** Handles customer needs quickly, efficiently, enthusiastically and courteously. Understands that providing excellent customer service builds lasting business relationships - the basis of our business. | ☐ | X | ☐ | ☐ | ☐ |
| **Flexibility/Adaptability to Change.** Accepts new assignments and changing responsibility in job assignments. Adapts constructively to policy, procedure and product changes. Relatively comfortable with ambiguity during periods of transition. | ☐ | ☐ | X | ☐ | ☐ |
| **Judgment/Decision Making.** Uses data from various sources. Makes logical analysis, presents alternatives, makes sound recommendations. Takes action in a timely manner. | ☐ | ☐ | X | ☐ | ☐ |
| **Motivation/Initiative.** Self-starting. Approaches work enthusiastically. Seeks out innovative solutions to work problems. Is reliable and works with a minimum of supervision. | ☐ | ☐ | X | ☐ | ☐ |

| | Performance Rating | | | | |
|---|---|---|---|---|---|
| | 5 | 4 | 3 | 2 | 1 |
| **Punctuality/Attendance.** | ☐ | ☐ | X | ☐ | ☐ |
| **Quality.** Work is thorough, accurate, neat - gives attention to detail. Follows up on items as appropriate. Follows established policies and guidelines. Results are effective. Ensures work meets customer requirements and strives to achieve customer satisfaction. | ☐ | ☐ | X | ☐ | ☐ |
| **Quantity/Productivity.** Produces expected amount of satisfactory work at reasonable speed and on schedule. Produces work that meets customer requirements for accuracy and timeliness without problems or rework. | ☐ | X | ☐ | ☐ | ☐ |
| **Risk Assessment/Management.** Proactively identifies and assesses risk. Develops strategies to minimize and effectively manage risk. | ☐ | ☐ | X | ☐ | ☐ |
| **Work Relations.** Develops cooperative, constructive working relationships that reflect Fleet's diversity goals. Deals with others in a sensitive, tactful, positive and courteous manner. Promotes teamwork within and among work units. | ☐ | ☐ | X | ☐ | ☐ |

## Overall Performance Rating

Check the statement that most accurately describes the incumbent's **total performance** during this review period. Consider the performance expectations in light of this particular job's learning curve.

| | | |
|---|---|---|
| ☐ | 5 | **Outstanding Contributor: Consistently far exceeds job requirements.** Makes the greatest contribution, especially when compared to others holding similar level assignments. |
| X☐ | 4 | **Exceeds Expectations: Consistently a strong performer.** Meets and frequently exceeds job requirements. |
| ☐ | 3 | **Meets Expectations: Meets major job requirements.** Performs duties in a fully satisfactory manner. |
| ☐ | 2 | **Needs Improvement: Meets some (not all) major job requirements.** Does not fully meet major job requirements. With an improvement plan, performance will reach a 3 rating, "Meets Expectations" in a reasonable time period. |
| ☐ | 1 | **Does Not Meet Expectations: Marginal/unacceptable performance.** Immediate, sustained significant improvement is required or employee will be removed from the position. |

**FMG 00309**

**Employee Comments**

## Goals for Next Review Period

Describe the agreed-upon, measurable goals and performance standards for the next review period.
Consider actions, activities or projects required to meet job accountabilities and/or special projects.

1. Increase production to achieve personal sales goal of $12million in closed production for calendar year 1998.

2  Continue to show development in level of product knowledge to ensure best program fit for customers and to better utilize non-traditional products i.e. B/C, Home Equity etc.

3.  Target Realtor contacts in assigned market to increase level of purchase mortgages and improve FMG market share.

## Signatures

The employee's signature indicates that he/she was given the opportunity to read this review and add comments; it does not necessarily signify total agreement.

| Employee Signature | Date | Supervisor Signature | Date | HR Representative Signature | Date |
|---|---|---|---|---|---|
| | | | 2/5/98 | | 2·18·98 |

**FMG 00310**

EXHIBIT F

**ﾑﾑﾑFleet**

**Performance Appraisal**

At Fleet, we need to rely on every employee - to strive for peak performance. Everyone has the opportunity to make a significant contribution to his or her own future - and the future of the entire organization.

| Name<br>Linda Ungerleider | Social Security #<br>147426070 |
|---|---|
| Department<br>Shelton CT - 0264 | Job Title<br>Loan Officer |
| Supervisor<br>Kevin Moran | Rating Period<br>1/98-12/98 |

## Job Accountabilities

In priority order, list the major job accountabilities and goals set during the previous review.
<u>Indicate the appropriate performance rating</u>: 5 - Outstanding Contributor, 4 - Exceeds Expectations, 3 - Meets Expectations, 2 - Needs Improvement, 1 - Does Not Meet Expectations

|  | PERFORMANCE RATING | | | | |
|---|---|---|---|---|---|
| 1.  Production - Originate loans for FMG at a level sufficient to meet personal goals and contribute to overall sales goals of the Shelton office. | 5 ☐ | 4 X☐ | 3 ☐ | 2 ☐ | 1 ☐ |
| 2. Branch Coverage - Provide coverage for assigned Fleet Bank branches.  Respond to all bank referrals in a timely manner maximizing sales and cross-sell.  Maintain clear and accurate communication with branches as to result and status of referrals. | 5 ☐ | 4 X☐ | 3 ☐ | 2 ☐ | 1 ☐ |
| 3. Customer Service - Consistently provide the highest level of customer service to both external and internal customers.  This includes prompt follow-up on all referrals, clear communication to all interested parties, timely response on all documentation requests. | 5 ☐ | 4 X☐ | 3 ☐ | 2 ☐ | 1 ☐ |
| 4. Compliance - Fully support and adhere to all FMG regulatory and compliance policies and procedures. | 5 ☐ | 4 ☐ | 3 X☐ | 2 ☐ | 1 ☐ |
| 5. CRA - Fully endorse and support FMG corporate CRA goals and objectives. | 5 ☐ | 4 ☐ | 3 X☐ | 2 ☐ | 1 ☐ |
| 6. | 5 ☐ | 4 ☐ | 3 ☐ | 2 ☐ | 1 ☐ |

## Comments

Linda closed 174 units for $21.6 million in 1998. Linda has once again demonstrated her ability to achieve a high level of production.

12/96

FMG 00311

## Other Performance Factors

Indicate the appropriate performance rating: 5 - Outstanding Contributor, 4 - Exceeds Expectations, 3 - Meets Expectations, 2 - Needs Improvement, 1 - Does Not Meet Expectations

| | Performance Rating | | | | |
|---|---|---|---|---|---|
| | 5 | 4 | 3 | 2 | 1 |
| **Audit/Compliance/Legal.** Takes initiative to comply with legal requirements and audit, regulatory and internal compliance guidelines. Responds quickly to correct regulatory, audit and compliance deficiencies. Adheres to Fleet's Code of Ethics. | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Communications.** Presents ideas clearly and concisely in written and oral form. Open and direct. Listens attentively. Keeps management informed as appropriate. | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Customer Service.** Handles customer needs quickly, efficiently, enthusiastically and courteously. Understands that providing excellent customer service builds lasting business relationships - the basis of our business. | ☐ | X ☐ | ☐ | ☐ | ☐ |
| **Flexibility/Adaptability to Change.** Accepts new assignments and changing responsibility in job assignments. Adapts constructively to policy, procedure and product changes. Relatively comfortable with ambiguity during periods of transition. | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Judgment/Decision Making.** Uses data from various sources. Makes logical analysis, presents alternatives, makes sound recommendations. Takes action in a timely manner. | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Motivation/Initiative.** Self-starting. Approaches work enthusiastically. Seeks out innovative solutions to work problems. Is reliable and works with a minimum of supervision. | ☐ | ☐ | X ☐ | ☐ | ☐ |

| | Performance Rating | | | | |
|---|---|---|---|---|---|
| | 5 | 4 | 3 | 2 | 1 |
| **Punctuality/Attendance.** | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Quality.** Work is thorough, accurate, neat - gives attention to detail. Follows up on items as appropriate. Follows established policies and guidelines. Results are effective. Ensures work meets customer requirements and strives to achieve customer satisfaction. | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Quantity/Productivity.** Produces expected amount of satisfactory work at reasonable speed and on schedule. Produces work that meets customer requirements for accuracy and timeliness without problems or rework. | ☐ | X ☐ | ☐ | ☐ | ☐ |
| **Risk Assessment/Management.** Proactively identifies and assesses risk. Develops strategies to minimize and effectively manage risk. | ☐ | ☐ | X ☐ | ☐ | ☐ |
| **Work Relations.** Develops cooperative, constructive working relationships that reflect Fleet's diversity goals. Deals with others in a sensitive, tactful, positive and courteous manner. Promotes teamwork within and among work units. | ☐ | ☐ | X ☐ | ☐ | ☐ |

## Overall Performance Rating

Check the statement that most accurately describes the incumbent's **total performance** during this review period. Consider the performance expectations in light of this particular job's learning curve.

| | | |
|---|---|---|
| ☐ | 5 | **Outstanding Contributor:** Consistently far exceeds job requirements. Makes the greatest contribution, especially when compared to others holding similar level assignments. |
| X ☐ | 4 | **Exceeds Expectations:** Consistently a strong performer. Meets and frequently exceeds job requirements. |
| | 3 | **Meets Expectations:** Meets major job requirements. Performs duties in a fully satisfactory manner. |
| ☐ | 2 | **Needs Improvement:** Meets some (not all) major job requirements. Does not fully meet major requirements. With an improvement plan, performance will reach a 3 rating, "Meets Expectations" in a reasonable time period. |
| ☐ | 1 | **Does Not Meet Expectations:** Marginal/unacceptable performance. Immediate, sustained significant improvement is required or employee will be removed from the position. |

FMG 00312

**Employee Comments**

## Goals for Next Review Period

Describe the agreed-upon, measurable goals and performance standards for the next review period.
Consider actions, activities or projects required to meet job accountabilities and/or special projects.

1. Increase production to achieve personal sales goal of $24 million in closed production for calendar year 1999.
2. Achieve goal of two closed loans per branch per month.
3. Continue to show development in level of product knowledge to ensure best program fit for customers and to better utilize non-traditional products i.e. B/C, Home Equity etc.
4. Achieve goal of 100% utilization of FNMA DU.
5. Target Realtor contacts in assigned market to increase level of purchase mortgages and improve FMG market share.

## Signatures

The employee's signature indicates that he/she was given the opportunity to read this review and add comments; it does not necessarily signify total agreement.

| Employee Signature | Date | Supervisor Signature | Date | HR Representative Signature | Date |
|---|---|---|---|---|---|
| | 2/7/99 | | 2/2/99 | | 2-19-99 |

FMG 00313

Exhibit G

9/17/99

Discussed with Linda Underhill Yale and Myer. She said "I just did it." "I'm sales your corporate", "To was a Realdo you don't know how they think."

Attended understanding policy/ then violating it.

FMG 00106

Korean exchange

# YALE UNIVERSITY
# AND
# YALE NEW HAVEN HOSPITAL

# FLEET BANK MORTGAGE DISCOUNT PROGRAM

- PART-TIME AND FULL TIME EMPLOYEE ELIGIBLE

- ALL LEVELS OF EMPLOYMENT

⟹ INTEREST RATE IS 1/2 HALF THE REGULAR RATE

    EXAMPLE: 6.250 FIXED WOULD BE
            5.750 FOR THE YALE
            EMPLOYEE

- THERE IS ABSOLUTELY NO BETTER RATE
  AVAILABLE WITH THIS DISCOUNT FOR YOUR
  YALE CUSTOMERS.  AVERAGE MONTHLY
  SAVINGS $200.00 PER MONTH BASED ON A
  240,000 MORTGAGE.

- CREDIT FINDINGS WITHIN SAME DAY OF
  APPLICATION.

- NO APPLICATION FEE OR LOCK IN FEE

⟹ ESCROWED TAXES CAN BE WAIVED SAVING
  THOUSANDS OF DOLLARS AT CLOSING.

CALL:  LINDA UNGERLEIDER
    FLEET MORTGAGE BANK
1-800-285-7586 EXT. 2 VOICE MAIL PAGER

FMG 00107

Exhibit H

Paquin, Rachel R.

| | |
|---|---|
| From: | Dailey, Donna J |
| Sent: | Monday, February 07, 2000 3:09 PM |
| To: | Paquin, Rachel R. |
| Subject: | FW: help for loan inputing |

-----Original Message-----
| | |
|---|---|
| From: | Moran, Kevin A. |
| Sent: | Monday, November 22, 1999 11:58 AM |
| To: | Ungerleider, Linda |
| Cc: | Pulver, Michael R.; Dailey, Donna J |
| Subject: | RE: help for loan inputing |

Linda,

My suggestion is that you continue to work on your applications following the directions in you loan officer guide, if you have technical problems contact the help desk when necessary. Jeanette spent time on Friday with the help desk on the incomplete loan in your workbench that was not properly uploaded. That problem is resolved through her efforts. Your laptop is functional and you are required to utilize it to originate mortgages with the company.

Kevin

-----Original Message-----
| | |
|---|---|
| From: | Ungerleider, Linda |
| Sent: | Sunday, November 21, 1999 10:01 AM |
| To: | Moran, Kevin A.; Moran, Kevin A. |
| Cc: | Marshall, Judith A.; Marshall, Judith A. |
| Subject: | help for loan inputing |
| Importance: | Low |

I am unable to input two loans and still do not know what I am doing. I have read the manual, I have read the shortcuts and have gone down the list with still know way to register and I can't figure out what I am doing. With the 5 different attempts to train me; I have yet been able to train with a real loan to input which seems to be the answer. I am very happy for all those that can do this but I can't take anymore loans until I can do this. I will give these loans to registeration manually and please inform me when I can get more help as I obviously can't take anymore loans until I have a better understanding of inputting. It is not flowing as indicated on the short cut list you gave me Kevin and I think it is because I am screwing it up from trying to merge credit to get liabilities.

1

FMG 00135

Exhibit I

Dailey, Donna J

| | |
|---|---|
| **From:** | Ackerman, Howard |
| **Sent:** | Monday, December 06, 1999 3:37 PM |
| **To:** | Moran, Kevin A. |
| **Cc:** | Dailey, Donna J; Pulver, Michael R.; Massella, Michael M. |
| **Subject:** | RE: arc grove team 5 |
| | |
| **Importance:** | Low |

Based on your message, I am instructing you to work with HR on a formal counseling of this employee based on the company policy you reference. I expect this to be completed with the next two business days.
Howard Ackerman

-----Original Message-----
**From:**     Moran, Kevin A.
**Sent:**      Monday, December 06, 1999 2:28 PM
**To:**         Ackerman, Howard
**Cc:**         Pulver, Michael R.; Dailey, Donna J; Paquin, Rachel R.; Salisbury, Betsy L.
**Subject:**  RE: arc grove team 5

Howard,

This individual is an extremely difficult employee, I am confident that a candid conversation with Donna Dailey, Rachel Paquin or Mike Pulver will shed light some light on this.  At issue:  Loan officer was unhappy with her assigned processor Marc Grove.  We switched her to Ava Simonelli, her existing pipe which is minimal, is being worked by Marc.  Customer received a commitment based upon the request submitted by the loan officer.  The original commitment required a HUD for the sale of the borrower's current residence.  Linda subsequently communicated with the processor that this was not the nature of the request and that the borrower would not be selling her home.  A request for a revised commitment was made.  My understanding is that Betsy is taking care of that today.  I think it is probably best for Betsy to speak for herself regarding any accusations Linda has made regarding a recommended career change.  My personal feeling is that this employee is a loose cannon and in this instance has violated company policy as it pertains to conflict resolution.

Kevin Moran

-----Original Message-----
**From:**     Ackerman, Howa
**Sent:**      Monday, December 06, 1999 12:44 PM
**To:**         Moran, Kevin A.; Pulver, Michael R.
**Subject:** FW: arc grove team 5
**Importance:**  Low

Please assist me in responding to Mike Massella on this matter.
Thank you.
Howard.

-----Original Message-----
**From:**     Massella, Michael M.
**Sent:**      Monday, December 06, 1999 12:03 PM
**To:**         Ackerman, Howard
**Cc:**         Dailey, Donna J
**Subject:** FW: arc grove team 5
**Importance:**  Low

Could you please look into this and get back to me.

-----Original Message-----
**From:**     Ungerleider, Linda
**Sent:**      Monday, December 06, 1999 11:59 AM
**To:**         Massella, Michael M.; Massella, Michael M.
**Cc:**         Pulver, Michael R.; Moran, Kevin A.
**Subject:** arc grove team 5
**Importance:**  Low

I think that you should be aware that Betsy Salisbury told me that perhaps I shouldn't be a loan officer anymore. For almost two years, while having the fortunate opportunity to have Frank, Steve and Chad and Mike as processors, I never even had to call Kevin and I even lost Betsy's extension because I never had problems when they were handling my files. Kevin has taken Marc Grove off my pipeline; however, I have asked that all my files be removed fr[f]om him. I just got off the phone with Betsy, an attornies office and a Realtor with my hands shaking so much, that I couldn't even hardly hold onto the phone.  For the third time, he has told me weeks in advance that loans are cleared to close and/or approved with conditions met and still has not sent out mortgage committment

1

**FMG 00110**

settled their mortgage commitment condition or sales agreement. Now, again, it is only a week from an actual closing the Betsy Belko, file closing Dec. 17 and Betsy Salisbury feels there really isn't a problem that Marc Grove still has an error on the commitment letter. She doesn't understand why the condition of having to sell your home and the home is not sold an "issue." This as you know, is not a true commitment. The customer is qualified without leasing or selling her home to close on Dec. 17th and this letter must be faxed as such, today, to attorney Tom Lynch, Milford. I have given the fax number to Salisbury. I have lost the trust of Sophis Messore, my number one realtor, who she herself had been the number one Century 21 agent for 5 consecutive years. This is the third file this month that was screwed up by Marc and I don't know how I will gain her trust other than I told her that management has changed my processor and I apologized for the aggravation.

I have indicated more than once that I love my job and I feel Fleet has problems but so does every company but it is a few people that I must work with that cause me the severity of stress that caused me to have to go via ambulance to Milford Hospital for what they said was causing my grabbing chest pains as severe stress disorder when Marc took over my files. I feel very confident that I am not the only one to make this complaint about servicing our customers and ask why we would lay off a competent worker as Steve was.

I think that a discussion with Betsy about her feeling for Marc Grove and her comments to loan officers is warranted. linda

Linda Ungerleider/Shelton
1-800-528-0745 ext. 3003

2

**FMG 00111**

EXHIBIT J

21

**Dalley, Donna J**

From:        Moran, Kevin A.
Sent:        Tuesday, December 07, 1999 4:42 PM
To:          Dalley, Donna J
Subject:     FW: lost branches

Importance:  Low
Sensitivity: Confidential

This is the message I mentioned. This is for your information only.

-----Original Message-----
From:        Downey, Pierce J.
Sent:        Tuesday, November 30, 1999 3:27 PM
To:          Moran, Kevin A.
Subject:     FW: lost branches
Importance:  Low

-----Original Message-----
From:        Ungerleider, Linda
Sent:        Wednesday, November 24, 1999 10:33 PM
To:          Downey, Pierce J.; Downey, Pierce J.
Subject:     lost branches
Importance:  Low

Hi Pierce: Is it me, or does it extra suck (excuse language) that Kevin took money out of our pockets and then emails a copy of it to us with Happy Thanksgiving attached? Even though we probably all get only a few deals a year from each branch; it still doesn't help matters. I guess that's all the thanks we get for working 14 hour days for 2 1/2 years so he can swim in his new pool. I'm not too bitter!!!!! I have to think about it but right now I just want to get the girls a well deserved Christmas gift and might not want to be part of gift giving to him. Maybe I'll get over it. Eitz. said something about talking to you about the "collection." I think what freaks me out the most is that some of those in the office don't have to give up anything ever. Sorry for venting but I am curious as to how you took the news. I was quite shocked and it really didn't help lead to a "Happy Thanksgiving." lin

Linda Ungerleider/Shelton
1-800-528-0745 ext. 3003

1

EXHIBIT K

Paquin, Rachel R.

| | |
|---|---|
| **From:** | Dailey, Donna J |
| **Sent:** | Monday, January 10, 2000 10:38 AM |
| **To:** | Paquin, Rachel R. |
| **Subject:** | FW: Linda |

For your file...

-----Original Message-----

| | |
|---|---|
| **From:** | Moran, Kevin A. |
| **Sent:** | Thursday, December 16, 1999 2:30 PM |
| **To:** | Dailey, Donna J |
| **Cc:** | Pulver, Michael R. |
| **Subject:** | RE: Linda |

Donna,

The examples I sent you demonstrate Linda's chronic displeasure with FMG. With every complaint I know I responded with an appropriate explanation, clarification or helped facilitate a change i.e. new processor etc. in an effort to address whatever her complaint of the moment was. The two specific documents that I forwarded to you that provided an appropriate opportunity for counsel were the apparent fraudulent credit explanation. In that instance your advice was that since we could not ascertain beyond a doubt that this was fraud that it should be dropped and so it was. In the matter of the marketing flyer that was factually wrong and misleading and distributed without approval from myself or our marketing department I noted in the documentation I sent you that I counseled her on 9/17/99 and her response is noted i.e. she admitted that she knowingly and willfully violated company policy. I informed her that any future violations would result in further disciplinary action up to and including termination at which point she told me that "she's sales and I'm corporate". She then stormed out of my office and returned a short while later with another emotional outburst to the effect that "she was a Realtor and knows how Realtors think and that I don't get it" then she stormed out again. Donna I have told you for years that this is the pattern with her. One of her letters references the first review I gave which had a two rating for her interpersonal communication i.e. basically coming unhinged with me and the processing staff. Her response when I met with her for the review was to storm out of my office and slam the door and not sign the review. You and I discussed this event at which time you informed me to simply forward the review without her signature. Let me know what additional response you may require.

Kevin

-----Original Message-----

| | |
|---|---|
| **From:** | Dailey, Donna J |
| **Sent:** | Wednesday, December 15, 1999 7:24 PM |
| **To:** | Moran, Kevin A. |
| **Subject:** | RE: Linda |
| **Importance:** | Low |

Having read through the info you sent, do we have any formal counsel or documentation on your response to some of these items?

-----Original Message-----

| | |
|---|---|
| **From:** | Moran, Kevin A. |
| **Sent:** | Tuesday, December 07, 1999 5:36 PM |
| **To:** | Dailey, Donna J |
| **Subject:** | Linda |

Donna,

I am faxing you 20 pages of letters, memos etc. that I have on file for Linda. Documentation regarding her continuous complaining which pre-dates my coming to Fleet.

Kevin

1

FMG 00119

Exhibit L

**Paquin, Rachel R.**

| | |
|---|---|
| **From:** | Moran, Kevin A. |
| **Sent:** | Monday, January 03, 2000 9:24 AM |
| **To:** | Paquin, Rachel R. |
| **Subject:** | RE: Linda Ungerlieder |

I will follow-up with you later today.

-----Original Message-----
**From:** Paquin, Rachel R.
**Sent:** Friday, December 31, 1999 12:50 PM
**To:** Moran, Kevin A.
**Cc:** Dailey, Donna J
**Subject:** Linda Ungerlieder
**Importance:** High

As a follow-up from our conversation on or about 12/16/99: Please outline the issues with Linda and give some specific examples/dates of these unacceptable episodes you discussed. This outline will provide a basis for the discussion to ensure you capture the pieces that are crucial in this verbal counseling session.

Thank you for your immediate attention. It is important to act on this immediately to avoid any further episodes.

*Rachel Paquin*
Human Resources Business Partner
Fleet Mortgage
401-431-7236
$522-7236

1

**FMG 00115**

Exhibit M

26

**Paquin, Rachel R.**

| | |
|---|---|
| **From:** | Moran, Kevin A. |
| **Sent:** | Wednesday, January 05, 2000 9:10 AM |
| **To:** | Paquin, Rachel R. |
| **Subject:** | FW: floor duty/territory |
| **Importance:** | Low |

-----Original Message-----
**From:** Ungerleider, Linda
**Sent:** Wednesday, January 05, 2000 8:54 AM
**To:** Moran, Kevin A.
**Subject:** RE: floor duty/territory
**Importance:** Low

kevin: alice left me a message that it was a good friend of hers that recommended the customer jennifer monroe to her. It is possible that although I procured the customer from floor duty and sent out a prequalification and that she called me for an appointment for a condo that she was negotiating on; it is also possible that Alice was called by a realtor or friend. The problem that I have is Alice telling the customer that I only work the Orange area. The tone is that those that do not take floor time need to be reminded that those of us who do take floor time do have the opportunity of work in any area we are willing to travel to as long as it isn't from branch referrals. Are you concerned as to your team as being alittle cut throat or just my "tone." My new year's resolution is to not let anyone in this company cause me undue stress. If the customer has now been persuaded to go with her agent and her agent's preferred lo, than that is fine with me; however, I would again appreciate you letting alice know that I did originally procure her customer from floor time which is acceptable to policy. There is no tone, just facts.

-----Original Message-----
**From:** Moran, Kevin A.
**Sent:** Tuesday, January 04, 2000 4:23 PM
**To:** Ungerleider, Linda
**Subject:** RE: floor duty/territory

I will discuss this with Alice. However the content and tone of this communication are of concern to me. I would like to discuss this with you.

-----Original Message-----
**From:** Ungerleider, Linda
**Sent:** Monday, January 03, 2000 6:13 PM
**To:** Moran, Kevin A.
**Subject:** floor duty/territory
**Importance:** Low

k."evin: I was under the impression that when we did floor duty, we could take any customers we wanted that came from that time and came from the l800 number not branch referrals obviously. I prequalified a Jennifer Monroe for a CHFA FHA purchase early Dec. and she left a message for me last week that she entered into a binder agreement and was ready to make an appointment to apply for her mortgage and that she would call me Monday but if I could call her on the weekend, she left me her home number as well. I called her Sunday to schedule an appointment and she said that she was told by an Alice Robinson that "linda only does loans in Orange" and scheduled her for Tuesday afternoon, tomorrow. I feel that you might point out about the Alice that we don't cut throat in our office; that those of us who take floor duty, reap the benefits of the calls and should be treated accordingly. If she is that desperate, then she can have it and it was quite frankly a surprise that" Ms. Born again," would be so deceitful. I thought that perhaps to avoid this instance of us working the floor and those that don't, should be reminded of the rules of the office. thank you.

Linda Ungerleider/Shelton
1-800-528-0745 ext. 3003



1

Exhibit N

**From:** Dailey, Donna J
**Sent:** Monday, January 10, 2000 10:41 AM
**To:** Paquin, Rachel R.
**Subject:** FW: Hummel

**Importance:** Low

For your file...

-----Original Message-----
**From:** Moran, Kevin A.
**Sent:** Thursday, December 09, 1999 4:58 PM
**To:** Pulver, Michael R.; Dailey, Donna J
**Subject:** FW: Hummel
**Importance:** Low

fyi

-----Original Message-----
**From:** Simonelli, Ava M.
**Sent:** Thursday, December 09, 1999 4:49 PM
**To:** Ungerfelder, Linda
**Cc:** Moran, Kevin A.; Salisbury, Betsy L.; Marra, Odette R.
**Subject:** Hummel
**Importance:** Low

Linda:

I was given a task on this electronic file to do the findings through DU. Once again the application is incomplete.

1. There is no information for present housing expenses
2. The schedule of Real Estate Owned is blank. The application states the borrower's own the property that they live in!
3. In the details of transactions there are no closing costs and prepaid costs.

This missing information precludes me from generating the findings. I find that our working relationship is new and I do not want to start off in the wrong direction, but I need you to do your job effectively, in order for me to do mine.

Please call me at your earliest convenience,
Ava

1

FMG 00120