## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
---------------------------------------------- X
LINDA UNGERLEIDER,                             :
                                               :    CIVIL ACTION NO.:
            Plaintiff                          :    3:02CV659(AVC)
                                               :
      v.                                       :
                                               :
FLEET MORTGAGE GROUP OF                        :
FLEET BANK [sic],                              :
                                               :
            Defendant                          :    NOVEMBER 17, 2003
---------------------------------------------- X
```

### APPENDIX OF UNPUBLISHED DECISIONS

1. <u>Davila v. The City of New York, et al.</u>, 99 Civ. 1885 (RNB) (AJP), 2000 U.S. Dist. LEXIS 17012, *15 (S.D.N.Y. Nov. 20, 2000).

2. <u>Harewood v. Beth Isr. Med. Ctr.</u>, 02 Civ. 5511 (HB), 2003 U.S. Dist. LEXIS 10082, *11-12 (S.D.N.Y. June 12, 2003)

3. <u>Javier v. Beiersdorf, Inc.</u>, 3:01cv458(AVC), 2002 U.S. Dist. LEXIS 8721, at * 16-17 (D. Conn. April 11, 2002)

4. <u>Arnold v. United International Video Stores</u>, 3:93cv1976 (AVC) 1994 U.S. Dist. LEXIS 20770 at * 15-16 (D. Conn. Aug. 17, 1994)

5. <u>Mathurin v. Skrivaneck</u>, 00 Civ. 1762, 2003 U.S. Dist. LEXIS 10200 at *32-33 (S.D.N.Y. June 5, 2003)

6. <u>Satterfield v. United Parcel Service</u>, 00 Civ. 7190, 2003 U.S. Dist. LEXIS 17229 at *33, 34 (S.D.N.Y. Sept. 28, 2003)

7. <u>Rinsler v. Sony Pictures Engm't, Inc.</u>, 02 Civ. 4096 (SAS), 2003 U.S. Dist. LEXIS 14754, *23-24 (S.D.N.Y. Aug. 22, 2003)

8. <u>Morris v. New York City Dep't of Sanitation</u>, 3:99 Civ. 4367, 2003 U.S. Dist. LEXIS 5146, 2003 WL 1739009, at *20 (S.D.N.Y. Apr. 2, 2003)

9. <u>Tutko v. James River Paper Company, Inc.</u>, 3:96 Civ. 1256 (AVC), 1998 U.S. Dist. LEXIS 20614 at *13 (D. Conn. Sept. 29, 1998)

10.   <u>Cavuoto v. Oxford Health Plans,</u> 3:99CV446(EBB), 2001 U.S. Dist. LEXIS 14357 at *11
      (D. Conn. June 13, 2001)

11.   <u>Hanger v. Lake County, et al.,</u> Civil No. 011506 (RHK/RLE) 2002 U.S. Dist. LEXIS
      25403 at *12-13 (D. Minn. Dec. 31, 2002)

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
------------------------------------------------ X
LINDA UNGERLEIDER,                               :
                                                 :    CIVIL ACTION NO.:
              Plaintiff                          :    3:02CV659(AVC)
                                                 :
       v.                                        :
                                                 :
FLEET   MORTGAGE   GROUP   OF                    :
FLEET BANK [sic],                                :
                                                 :
              Defendant                          :    NOVEMBER 17, 2003
------------------------------------------------ X
```

## APPENDIX OF UNPUBLISHED DECISIONS

1.    Davila v. The City of New York, et al., 99 Civ. 1885 (RNB) (AJP), 2000 U.S. Dist.
      LEXIS 17012, *15 (S.D.N.Y. Nov. 20, 2000)

2.    Harewood v. Beth Isr. Med. Ctr., 02 Civ. 5511 (HB), 2003 U.S. Dist. LEXIS 10002, *11-
      12 (S.D.N.Y. June 12, 2003)

3.    Javier v. Beiersdorf, Inc., 3:01cv458(AVC), 2002 U.S. Dist. LEXIS 8731 at * 16-17 (D.
      Conn. April 11, 2002)

4.    Arnold v. United International Video Stores, 3:93cv1976 (AVC) 1994 U.S. Dist. LEXIS
      20770 at * 15-16 (D. Conn. Aug. 17, 1994)

5.    Mathurin v. Skrivaneck, 00 Civ. 1762, 2003 U.S. Dist. LEXIS 10200 at *32-33
      (S.D.N.Y. June 5, 2003)

6.    Satterfield v. United Parcel Service, 00 Civ. 7190, 2003 U.S. Dist. LEXIS 17229 at *33,
      34 (S.D.N.Y. Sept. 28, 2003)

7.    Rinsler v. Sony Pictures Engm't, Inc., 02 Civ. 4096 (SAS), 2003 U.S. Dist. LEXIS
      14754, *23-24 (S.D.N.Y. Aug. 22, 2003)

8.    Morris v. New York City Dep't of Sanitation, 3:99 Civ. 4367, 2003 U.S. Dist. LEXIS
      5146, 2003 WL 1739009, at *20 (S.D.N.Y. Apr. 2, 2003)

9.    Tutko v. James River Paper Company, Inc., 3:96 Civ. 1256 (AVC), 1998 U.S. Dist.
      LEXIS 20614 at *13 (D. Conn. Sept. 29, 1998)

10.    <u>Cavuoto v. Oxford Health Plans</u>, 3:99CV446(EBB), 2001 U.S. Dist. LEXIS 14357 at *11
       (D. Conn. June 13, 2001)

11.    <u>Hanger v. Lake County, et al.</u>, Civil No. 011506 (RHK/RLE) 2002 U.S. Dist. LEXIS
       25403 at *12-13 (D. Minn. Dec. 31, 2002)

1

LEXSEE 2000 U.S. DIST. LEXIS 17012

**MAUREEN JOHNS-DAVILA, Plaintiff, -against- THE CITY OF NEW YORK, et al., Defendants.**

**99 Civ. 1885 (RMB)(AJP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2000 U.S. Dist. LEXIS 17012; 12 Am. Disabilities Cas. (BNA) 116*

**November 20, 2000, Decided**

**DISPOSITION:** [*1] Defendants' summary judgment motion should be granted on Davila's ADA claim, and her NYSHRL discrimination claim should be dismissed without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff brought this action under the Americans with Disabilities Act and the New York State Human Rights Law alleging that defendant, city human resources administration, unlawfully discriminated against her because of her disability in refusing to grant her work accommodations when it terminated her employment. Defendants moved for summary judgment, arguing that plaintiff had not established a prima facie case of disability discrimination.

**OVERVIEW:** Plaintiff suffered from fibromyalgia which she claimed was exacerbated by the sick building that she worked in. She was denied her request to be transferred to another work building that was clean, well-maintained and had adequate ventilation, but was granted a medical leave of absence. She did not return to work after the leave of absence because she claimed that the defendant would not allow her to return unless she had fully recovered from her disabling condition, which could not happen unless she worked in a different building. Defendant considered her absent without leave and let her go. The magistrate found that plaintiff had not made out a prima facie case of disability under the Americans with Disabilities Act (ADA). Plaintiff's complaint, which was prepared by counsel, only alleged that her fibromyalgia condition limited her ability to exercise, which was not a major life activity as required by the statute, and did not allege an inability to work. Plaintiff's evidence of brief hesitation and pain that she was able to work through, nor her restriction from working in a sick building, did not rise to the level of a disability within the meaning of the ADA.

**OUTCOME:** The magistrate recommended that defendants' summary judgment motion should be granted on plaintiff's Americans with Disabilities Act claim because her complaint, which was prepared by counsel, only alleged that her fibromyalgia condition limited her ability to exercise, and did not allege an inability to work. The magistrate further recommended that her New York State Human Rights Law discrimination claim should be dismissed without prejudice.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For MAUREEN JOHNS-DAVILA, plaintiff: Irene Donna Thomas, Thomas & Associates, New York, NY.

For THE CITY OF NEW YORK, NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, defendants: Stephen Kitzinger, NYC Law Department, New York, NY.

**JUDGES:** ANDREW J. PECK, United States Magistrate Judge. Honorable Richard M. Berman, United States District Judge.

**OPINIONBY:** ANDREW J. PECK

Case 3:02-cv-00659-AVC    Document 53    Filed 11/17/2003    Page 7 of 26

Page 2

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

**OPINION:**

REPORT AND RECOMMENDATION

ANDREW J. PECK, United States Magistrate Judge:
To the Honorable Richard M. Berman, United States District Judge:

Plaintiff Maureen Johns-Davila brings this action under the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"), n1 alleging that the City Human Resources Administration ("HRA") unlawfully discriminated against her because of her disability when it terminated her employment. (E.g., Dkt. No. 1: Compl. PP29, 33.) Specifically, Davila complains that the HRA refused to grant her work accommodations of fifteen-minute rest periods every hour-and-a half to two hours to perform physical [*2] therapy to control her disability. (Davila Br. at 1.) Defendants have moved for summary judgment, arguing that Davila has not established a prima facie case of disability discrimination. (E.g., City Br. at 2.)

---

n1 Davila's complaint (Dkt. No. 1) also asserted claims pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617, and Title VII, 42 U.S.C. § 2000(e). (Compl. PP1, 30-31, 34-35.) Davila voluntarily dismissed with prejudice her FMLA and Title VII claims. (Dkt. Nos. 9 & 12: Stipulation & Orders, dated 6/7/00 & 6/9/00). Thus, only plaintiff's ADA and related NYSHRL disability claims remain.

---

For the reasons set forth below, defendants' summary judgment motion should be granted on Davila's ADA claim, and her NYSHRL discrimination claim should be dismissed without prejudice.

FACTS

Davila's Employment and Termination

Davila began employment with HRA as a Senior Community Liaison in August 1985. (Compl. P3, 6; City 56.1 Stmt. P1; [*3] Davila Aff. P3.) n2

---

n2 Despite the August 1985 date in the Complaint, plaintiff now claims that she was hired by HRA in October 1987. (Davila 56.1 Stmt. P1.) The dispute as to Davila's start date has no significance for this summary judgment motion.

---

In October 1988, Davila was diagnosed with fibromyalgia. (Compl. P7; Dkt. Nos. 19 & 24: City & Davila 56.1 Stmts. P2.) This condition requires Davila to perform regular exercise to strengthen and condition her neck and shoulders. (Compl. P7; City & Davila 56.1 Stmts. P3.) According to the complaint, Davila alleges that her "fibromyalgia is a permanent condition and impairs her from performing consistent, vigorous exercise." (Compl. P8; accord, City & Davila 56.1 Stmts. P3.)

On April 18, 1997, Davila requested a medical hardship transfer to a different location as an accommodation. (Compl. P11; City & Davila 56.1 Stmts. P5; Kitzinger 6/16/00 Aff. Ex. C: 4/18/97 Transfer Request.) In May 1997, HRA informed Davila that there were no vacancies at other sites, [*4] "medical documentation does not indicate a hardship transfer is necessary," and therefore that her transfer request was denied. (Compl. P12, 13; City & Davila 56.1 Stmts. PP7-8; Kitzinger 6/16/00 Aff. Ex. D: 5/13/97 HRA Letter.) Davila insists, however, that she was aware of vacancies for which she was qualified. (Davila 56.1 Stmt. P18; Davila Aff. P48.)

Davila requested and was granted a medical leave of absence from June 9, 1997 to August 14, 1997. (Compl. P15; City & Davila 56.1 Stmts. PP9-10; see also Butler Aff. Ex. A & Kitzinger 6/16/00 Aff. Ex. E: 6/17/97 Dr. de la Hoz Letter.) On August 12, 1997, Davila requested an extension of her medical leave, which was denied. (Compl. PP16-17; City & Davila 56.1 Stmts. PP11-13; Kitzinger Aff. Ex. G: 8/12/97 Extension Request Letter.)

Davila insists that the reason she did not return to work after August 14, 1997 was because the City would not allow her to return unless she had fully recovered from her disabling condition. (Compl. PP21, 22, 24; see City & Davila 56.1 Stmts. P14; Davila Aff. P39, 44, 46, 47, 49.) In particular, Davila requested that she be transferred to another work location (building) that was clean, well-maintained [*5] and had adequate ventilation, and she requested fifteen minute break periods. (Davila Aff. P39.)

Since Davila did not return to work at the conclusion of her medical leave, HRA considered her absent without leave. (Compl. P24; City & Davila 56.1 Stmts. P14.) The City notified Davila that her employment would be terminated, and she was served with charges and specifications alleging that she was absent without leave. (Compl. P24; City & Davila 56.1 Stmts. P14; Kitzinger 6/16/00 Aff. Ex. H: 2/19/98 Notification of Charge Letter.) Davila was found guilty of being absent without leave, and her employment with the City was terminated effective September 22, 1999. (City & Davila 56.1 Stmts. PP15, 16; Kitzinger 6/16/00 Aff. Ex. I: 5/14/99

Page 3

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

Determination of Grievance Letter; Kitzinger 6/16/00 Aff. Ex. J: 9/22/99 Notice of Termination Letter.)

**Davila's Medical Condition**

Davila asserts that fibromyalgia is a permanent condition that is sensitive to atmospheric and environmental changes. (Compl. P7.) She also claims that the condition "impairs her from performing consistent, vigorous exercise." (Compl. P8.) Her complaint states that she "can perform sedentary and clerical work [*6] as long as allowances are made for opportunities for momentary (less than ten minutes) of stretching once or twice during an eight hour shift." (Id.)

In opposition to the City's summary judgment motion, Davila has submitted affidavits and letters from her doctors elaborating on her condition. Dr. Michael Belmont explains that:

> Fibromyalgia is a chronic disorder producing chronic pain and musculoskeletal dysfunction... Periodic exacerbations of this illness are to be expected. However, these exacerbations are unpredictable although both physical and psychological stressors may be responsible. I expect Ms. Johns-Davila to continue to work full-time and anticipate only rare exacerbations ...

(Belmont Aff. Ex. D: 4/3/97 Letter.) Dr. Belmont's affidavit asserts, however, that Davila can not work in a "sick building" since that exacerbates her fibromyalgia:

> 8. Although Ms. Davila is "high functioning" under normal circumstances, she is totally unable to work in a "sick building." Normally, she can only perform sedentary and clerical work as long as allowances are made for opportunities for stretching at every 1.5 to 2 hours each day. She is unable to climb stairs, [*7] she cannot lift or carry heavy files, sit for long periods of time or perform work on computers due to the lack of flexibility in her hands. Where a "sick building" is present, Ms. Davila cannot even perform sedentary and clerical work.

> 9. Beginning in April 1997, Ms. Johns-Davila visited my office complaining of exacerbations of her medical condition... On June 9, 1997, I found Ms. Davila to be totally disabled

and that her impairment precluded her from performing her occupational duties.

...

> 11. Based on her office visits, I learned that Ms. Johns-Davila had visited the Bellevue Occupational and Environmental Clinic with respect to her increasingly disabling condition. After receiving a report from the Clinic indicating that a survey of Ms. Davila's work location indicated that Ms. Davila's work location was improperly ventilated and contained pollutants normally associated with "sick building syndrome," I wrote a note dated August 28, 1997 indicating that her expected date of return to work was September 17, 1997 but only if she was placed in a new work location.

> 12. I examined Ms. Davila on September 5, 1997, September 15, 1997, September 29, 1997 and several times [*8] thereafter. I provided Ms. Davila with monthly medical notes on [twelve occasions in 1998 and 1999], each one indicating that Ms. Davila could return to work with ventilation, preferably a new work location, and rest.

(Belmont Aff. PP8-9, 11-12, emphasis added; see also Butler Aff. Ex. A: 10/13/97 Dr. de la Hoz Letter.)

**ANALYSIS**

**I. SUMMARY JUDGMENT STANDARDS IN EMPLOYMENT DISCRIMINATION CASES**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P.56(c); see also, e.g., *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).* n3

n3 See also, e.g., *Carbonell v. Goord, 2000 U.S. Dist. LEXIS 8227, 99 Civ. 3208, 2000 WL 760751 at *4 (S.D.N.Y. June 13, 2000)* (Peck,

Page 4

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

M.J.); *Greenfield v. City of New York, 2000 U.S. Dist. LEXIS 1164, 99 Civ. 2330, 2000 WL 124992 at *3* (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); *Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d 343, 352 (S.D.N.Y. 1999); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 387 (S.D.N.Y. 1998)* (Stein, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't Corp. Counsel, 1997 U.S. Dist. LEXIS 620, 94 Civ. 9042, 1997 WL 27047 at *6* (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.).

[*9]

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment--here, defendants. See, e.g., *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994).* n4 The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., *Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.* n5

n4 See also, e.g., *Carbonell v. Goord, 2000 WL 760751 at *4; Greenfield v. City of New York, 2000 WL 124992 at *3; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 352; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 387; Hernandez v. New York City Law Dep't, 1997 WL 27047 at *6.* [*10]

n5 See also, e.g., *Carbonell v. Goord, 2000 WL 760751 at *4.*

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).* n6 Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P.56(e); accord, e.g., *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356.* n7

n6 See also, e.g., *Carbonell v. Goord, 2000 WL 760751 at *4.n7 See also, e.g., Carbonell v. Goord, 2000 WL 760751 at *4.*

In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed, [*11] and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, 477 U.S. at 255, 106 S. Ct. at 2513.* n8 The Court draws all inferences in favor of the nonmoving party--here, Davila--only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., *Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489, 98 L. Ed. 2d 487 (1987).* n9 "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM, 43 F.3d at 37.* n10

n8 See also, e.g., *Chambers v. TRM, 43 F.3d at 36; Gallo v. Prudential, 22 F.3d at 1223; Carbonell v. Goord, 2000 WL 760751 at *4; Greenfield v. City of New York, 2000 WL 124992 at *4; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 387; Hernandez v. New York City Law Dep't, 1997 WL 27047 at *6.* [*12]

n9 Accord, e.g., *Carbonell v. Goord, 2000 WL 760751 at *4; Greenfield v. City of New York, 2000 WL 124992 at *4; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 388; Hernandez v. New York City Law Dep't, 1997 WL 27047 at *7.n10 Accord, e.g., Carbonell v. Goord, 2000 WL 760751 at *5; Greenfield v. City of New York, 2000 WL 124992 at *4; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 387; Hernandez v. New York City Law Dep't, 1997 WL 27047 at *7.*

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., *Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986),* [*13] cert. denied, *480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987).* n11 To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., *Anderson v. Liberty Lobby, 477 U.S. at 248, 106 S. Ct. at*

Case 3:02-cv-00659-AVC    Document 53    Filed 11/17/2003    Page 10 of 26

Page 5

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

2510. n12 While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,] factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, 477 U.S. at 248, 106 S. Ct. at 2510* (citations omitted). n13

> n11 Accord, e.g., *Carbonell v. Goord, 2000 WL 760751 at \*5; Greenfield v. City of New York, 2000 WL 124992 at \*4; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 387.* n12 Accord, e.g., *Carbonell v. Goord, 2000 WL 760751 at \*5; Greenfield v. City of New York, 2000 WL 124992 at \*4; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 387.* [\*14]

> n13 See also, e.g., *Knight v. United States Fire Ins. Co., 804 F.2d at 11-12; Carbonell v. Goord, 2000 WL 760751 at \*5; Greenfield v. City of New York, 2000 WL 124992 at \*4; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 387.*

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." *Gallo v. Prudential, 22 F.3d at 1224.* n14 Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. E.g., *Gallo v. Prudential, 22 F.3d at 1224; Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir.1990).* n15 "Summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion [\*15] at trial... There must either be a lack of evidence in support of the plaintiff's position . . . or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998);* accord, e.g., *Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 354.* Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer. E.g., *Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at \*1 (2d Cir. June 29, 2000); Stern v. Trustees of Columbia*

*Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).* n16 In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more [\*16] likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ., 131 F.3d at 312;* see, e.g., *Schnabel v. Abramson, 232 F.3d 83, 2000 U.S. App. LEXIS 27945, 2000 WL 1676601 at \*7 (2d Cir. 2000); Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000)* (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, 'it is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."); *Fisher v. Vassar College, 114 F.3d 1332, 1339 (2d Cir. 1997)* (en banc), cert. denied, *522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir.1996)* (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge"). n17

> n14 Accord, e.g., *Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)* ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); *McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)* ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); *Cardozo v. Healthfirst Inc., 1999 U.S. Dist. LEXIS 15364, 98 Civ. 3050, 1999 WL 782546 at \*1-2 (S.D.N.Y. Sept. 30, 1999)* (Berman, D.J.); see also, e.g., *Chambers v. TRM, 43 F.3d at 40; Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 388; Hernandez v. New York City Law Dep't, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at \*7. [\*17]*

> n15 See also, e.g., *Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 353; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 388; Hernandez v. New York City Law Dep't, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at \*7.* n16 See also, e.g., *Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 354; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 388; Hernandez v. New York City Law Dep't, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at \*7;*

Case 3:02-cv-00659-AVC     Document 53     Filed 11/17/2003     Page 11 of 26

Page 6

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

*Engelmann v. National Broad. Co., 1996 U.S. Dist. LEXIS 1865, 94 Civ. 5616, 1996 WL 76107* at *7 (S.D.N.Y. Feb.22, 1996).n17 See also, e.g. *Budde v. H&K Distrib. Co., 216 F.3d 1071, 2000 WL 900204* at *1; *Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 354; Hernandez v. New York City Law Dep't, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047* at *7; *Scaria v. Rubin, 1996 U.S. Dist. LEXIS 9659, 94 Civ. 3333, 1996 WL 389202* at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, *117 F.3d 652, 654 (2d Cir. 1997).*

## II. DAVILA HAS NOT SHOWN A PRIMA FACIE CASE OF DISABILITY UNDER THE ADA n18

n18 The Court, therefore, need not reach defendants' claim that Davila did not timely file a charge before the EEOC (see City Br. at 58), nor Davila's "continuing violation" response (see Davila Br. at 7-8).

[*18]

### A. ADA Standards

The ADA prohibits discrimination by covered employers against qualified individuals with a disability. 42 U.S.C. § 12112(a); see, e.g., *Sutton v. United Air Lines, Inc., 527 U.S. 471, 477-78, 119 S. Ct. 2139, 2144, 144 L. Ed. 2d 450 (1999).* "To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Heyman v. Queens Village Comm. for Mental Health for Jamaica Community Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).* n19

n19 Accord, e.g., *Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998); Pace v. Paris Maintenance Co., 107 F. Supp. 2d 251, 259 (S.D.N.Y. 2000); Williams v. Salvation Army, 108 F. Supp. 2d 303, 311 (S.D.N.Y. 2000)* (Berman, D.J.); *Shields v. Robinson-Van Vuren Assoc., Inc., 2000 U.S. Dist. LEXIS 6234, 98 Civ. 8785, 2000 WL 565191* at *3 (S.D.N.Y. May 8, 2000); *McLean-Nur v. Department of Transportation, 2000 U.S. Dist. LEXIS 3495, 98 Civ. 819, 2000 WL 297176* at *5 (S.D.N.Y. March 21, 2000).

[*19]

As the Second Circuit has made clear, ADA claims, like Title VII claims, are analyzed using the McDonnell Douglas burden shifting analysis:

> In analyzing a discriminatory discharge claim under the ADA, we apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).* Under McDonnell Douglas, plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."

*Heyman v. Queens Village, 198 F.3d at 72* [*20] (citations omitted). n20

n20 See, e.g., *Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994)* (Rehabilitation Act), cert. denied, *513 U.S. 1147, 115 S. Ct. 1095, 130 L. Ed. 2d 1063 (1995); Pace v. Paris Maintenance Co., 107 F. Supp. 2d at 259; Williams v. Salvation Army, 108 F. Supp. 2d at 314-15; Shields v. Robinson-Van Vuren Assoc., Inc., 2000 U.S. Dist. LEXIS 6234, 2000 WL 565191* at *3; *McLean-Nur v. Department of Transp., 2000 U.S. Dist. LEXIS 3495, 2000 WL 297176* at *5-6; *Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 390 (S.D.N.Y. Oct. 13, 1998)* (Stein, D.J. & Peck, M.J.) (citing cases); *Johnson v. St. Clare's Hosp. & Health Ctr., 1997 U.S. Dist. LEXIS 22492, 96 Civ. 1425, 1998 WL 236235* at *6 (S.D.N.Y. May 13, 1998)* (Mukasey, D.J. & Peck, M.J.), aff'd, *No. 98-7831,*

Case 3:02-cv-00659-AVC    Document 53    Filed 11/17/2003    Page 12 of 26

Page 6

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

*Engelmann v. National Broad. Co., 1996 U.S. Dist. LEXIS 1865, 94 Civ. 5616, 1996 WL 76107* at *7 (S.D.N.Y. Feb.22, 1996).n17 See also, e.g. *Budde v. H&K Distrib. Co., 216 F.3d 1071, 2000 WL 900204* at *1; *Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d at 354; Hernandez v. New York City Law Dep't, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047* at *7; *Scaria v. Rubin, 1996 U.S. Dist. LEXIS 9659, 94 Civ. 3333, 1996 WL 389250* at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, *117 F.3d 652, 654 (2d Cir. 1997).*

## II. DAVILA HAS NOT SHOWN A PRIMA FACIE CASE OF DISABILITY UNDER THE ADA n18

n18 The Court, therefore, need not reach defendants' claim that Davila did not timely file a charge before the EEOC (see City Br. at 58), nor Davila's "continuing violation" response (see Davila Br. at 7-8).

[*18]

### A. ADA Standards

The ADA prohibits discrimination by covered employers against qualified individuals with a disability. 42 U.S.C. § 12112(a); see, e.g., *Sutton v. United Air Lines, Inc., 527 U.S. 471, 477-78, 119 S. Ct. 2139, 2144, 144 L. Ed. 2d 450 (1999).* "To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Heyman v. Queens Village Comm. for Mental Health for Jamaica Community Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).* n19

n19 Accord, e.g., *Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998); Pace v. Paris Maintenance Co., 107 F. Supp. 2d 251, 259 (S.D.N.Y. 2000); Williams v. Salvation Army, 108 F. Supp. 2d 303, 311 (S.D.N.Y. 2000)* (Berman, D.J.); *Shields v. Robinson-Van Vuren Assoc., Inc., 2000 U.S. Dist. LEXIS 6234, 98 Civ. 8785, 2000 WL 565191* at *3 (S.D.N.Y. May 8, 2000); *McLean-Nur v. Department of Transportation, 2000 U.S. Dist. LEXIS 3495, 98 Civ. 819, 2000 WL 297176* at *5 (S.D.N.Y. March 21, 2000).

[*19]

As the Second Circuit has made clear, ADA claims, like Title VII claims, are analyzed using the McDonnell Douglas burden shifting analysis:

In analyzing a discriminatory discharge claim under the ADA, we apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).* Under McDonnell Douglas, plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."

*Heyman v. Queens Village, 198 F.3d at 72* [*20] (citations omitted). n20

n20 See, e.g., *Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994)* (Rehabilitation Act), cert. denied, *513 U.S. 1147, 115 S. Ct. 1095, 130 L. Ed. 2d 1063 (1995); Pace v. Paris Maintenance Co., 107 F. Supp. 2d at 259; Williams v. Salvation Army, 108 F. Supp. 2d at 314-15; Shields v. Robinson-Van Vuren Assoc., Inc., 2000 U.S. Dist. LEXIS 6234, 2000 WL 565191* at *3; *McLean-Nur v. Department of Transp., 2000 U.S. Dist. LEXIS 3495, 2000 WL 297176* at *5-6; *Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 390 (S.D.N.Y. Oct. 13, 1998)* (Stein, D.J. & Peck, M.J.) (citing cases); *Johnson v. St. Clare's Hosp. & Health Ctr., 1997 U.S. Dist. LEXIS 22492, 96 Civ. 1425, 1998 WL 236235* at *6 (S.D.N.Y. May 13, 1998) (Mukasey, D.J. & Peck, M.J.), aff'd, *No. 98-7831,*

Case 3:02-cv-00659-AVC    Document 53    Filed 11/17/2003    Page 13 of 26

Page 7

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

*175 F.3d 1008 (table), 1999 WL 97232 (2d Cir. Feb. 24, 1999).*

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits [*21] one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *42 U.S.C. § 12102(2); see, e.g., Sutton v. United Air Lines, Inc., 527 U.S. at 478, 119 S. Ct. at 2144.* n21

n21 See also, e.g., *Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 563, 119 S. Ct. 2162, 2167, 144 L. Ed. 2d 518 (1999); Schaefer v. State Ins. Fund, 207 F.3d 139, 142 (2d Cir. 2000); Heyman v. Queens Village, 198 F.3d at 72; Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998),* cert. denied, *526 U.S. 1018, 119 S. Ct. 1253, 143 L. Ed. 2d 350 (1999); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d at 150; Ryan v. Grae & Rybicki, 135 F.3d at 870; Williams v. Salvation Army, 108 F. Supp. 2d at 311; Douglas v. Victor Capital Group, 21 F. Supp. 2d at 390-91; Johnson v. St. Clare's Hosp. & Health Ctr., 1997 U.S. Dist. LEXIS 22492, 1998 WL 236235 at *7.*

[*22]

The EEOC defines the term "substantially limits" as:

"(i) Unable to perform a major life activity that the average person in the general population can perform; or

"(ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

*Heyman v. Queens Village, 198 F.3d at 72 (quoting 29 C.F.R. § 1630.2(j)(1)); see, e.g., Sutton v. United Air Lines, Inc., 527 U.S. at 480, 119 S. Ct. at 2145; Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999); 187 F.3d at 312; Colwell v. Suffolk County Police Dep't, 158 F.3d at 643; Ryan v. Grae & Rybicki, 135 F.3d at 870; Williams v. Salvation Army, 108 F. Supp. 2d at 312 n.11.* n22

n22 The EEOC is primarily responsible for the enforcement of the ADA, and EEOC regulations are accorded great deference in interpreting the ADA. See, e.g., *Heyman v. Queens Village, 198 F.3d at 72; Muller v. Costello, 187 F.3d at 312 & n.5 (2d Cir. 1999); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d at 150 & n.3; Ryan v. Grae & Rybicki, 135 F.3d at 870.*

[*23]

EEOC regulations define a "major life activity" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *29 C.F.R. § 1630.2(i); see also, e.g., Sutton v. United Air Lines, Inc., 527 U.S. at 480, 119 S. Ct. at 2145; Heyman v. Queens Village, 198 F.3d at 73; Reeves v. Johnson Controls World Servs., Inc., 140 F.3d at 150; Ryan v. Grae & Rybicki, 135 F.3d at 870; Shields v. Robinson-Van Vuren Assoc., Inc., 2000 U.S. Dist. LEXIS 6234, 2000 WL 565191 at *4.*

In determining whether an impairment substantially limits a major life activity, three factors are considered: "'(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; (iii) the permanent or long-term impact, or the expected permanent or longterm impact of or resulting from the impairment.'" *Colwell v. Suffolk County Police Dep't, 158 F.3d at 643 (quoting 29 C.F.R. § 1630.20(j)(2)); see, e.g., Ryan v. Grae & Rybicki, 135 F.3d at 870; Muszak v. Sears, Roebuck & Co., 63 F. Supp. 2d 292, 299 (W.D.N.Y.1999);* [*24] *Kirkendall v. United Parcel Serv. Inc., 964 F. Supp. 106, 109-10 (W.D.N.Y.1997); Hazeldine v. Beverage Media, Ltd., 954 F. Supp. 697, 703 (S.D.N.Y. 1997).*

Not every physical or mental impairment is an ADA disability, because not every physical or mental impairment substantially limits a major life activity. See, e.g., *29 C.F.R. Pt. 1630, App. (1998)* ("Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. An impairment rises to the level of disability if the impairment substantially limits one or more of the individual's major life activities."); *Colwell v. Suffolk County Police Dep't, 158 F.3d at 641* (A "plaintiff who showed that he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible if the limitation of the major life activity was not substantial."); *Reeves v. Johnson Controls World Servs., Inc., 140 F.3d at 151; Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995)* ("not every impairment that affect[s] an individual's major life activities is a substantially limiting impairment"); [*25] *Ryan v. Grae & Rybicki, 135 F.3d at 870* ("Although almost any impairment may, of

course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities."); *Williams v. Salvation Army*, 108 F. Supp. 2d at 311; *Douglas v. Victor Capital Group*, 21 F. Supp. 2d at 390-91 (& cases cited therein).

**B. Davila is Not Disabled Within the Meaning of the ADA**

1. Exercise Is Not A Major Life Activity

In her complaint, Davila claims that exercise is a major life activity. (Compl. P8.) Davila is incorrect as a matter of law. See, e.g., *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998) (Activities such as gardening, shoveling snow and "engaging in other physical exercise . . . clearly fall outside the range of 'major' life activities."), cert. denied, 526 U.S. 1018, 119 S. Ct. 1253, 143 L. Ed. 2d 350 (1999); *Rosa v. Brink's Inc.*, 103 F. Supp. 2d 287, 290 (S.D.N.Y. 2000) [*26] ("sports activities are not major life activities"); *Epstein v. Kalvin-Miller Int'l, Inc.*, 100 F. Supp. 2d 222, 226 (S.D.N.Y. 2000) ("'strenuous activity' . . . clearly does not constitute a major life activity"); *Yeskey v. Pennsylvania*, 76 F. Supp. 2d 572, 577 (M.D. Pa. 1999) (strenuous exercise is not a major life activity); *Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26 (D. Conn.) ("sports activities do not constitute major life activities"), aff'd mem, 216 F.3d 1072 (2d Cir. 2000); *Kirkendall v. United Parcel Serv., Inc.*, 964 F. Supp. 106, 111 (W.D.N.Y. 1997) ("Courts also have recognized that the inability to engage in leisure activities and sports, which require a great deal of physical vigor, does not equate with the inability to engage in normal everyday activities or job-related duties."); *Hazeldine v. Beverage Media, Ltd.*, 954 F. Supp. 697, 703-04 (S.D.N.Y. 1997) (inability to "shovel snow or engage in other strenuous physical exercise" does not constitute a substantial limitation on major life activity).

2. Working is a Major Life Activity, But Davila's Complaint [*27] Does Not Allege An Inability to Work

In her papers opposing defendants' summary judgment motion, Davila claims that her fibromyalgia (as exacerbated by sick building syndrome) substantially limits her ability to work. (Davila Br. at 10-13.)

Obviously, working is a major life activity. See 29 C.F.R. § 1630.2(i) ("major life activity" defined as including "working"); see also, e.g., *Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 79-80 (2d Cir. 2000) (holding that working is a major life activity).

However, because plaintiff Davila's complaint--prepared by counsel--only alleges that her fibromyalgia condition limits her ability to exercise (Compl. P8) and does not allege an inability to work, she cannot rely on an alleged inability to work in opposition to summary judgment. See, e.g., *Adams v. Strombecker Corp.*, No. 97-7018, 153 F.3d 726 (table), 1998 WL 381028 at *1 (10th Cir. July 6, 1998) (affirming district court's refusal to consider on summary judgment ADA plaintiff's claim that he was "regarded as" disabled where plaintiff did not plead a "regarded as" claim in his complaint); *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 697-98 (S.D.N.Y. 1999) [*28] (Wood, D.J. & Peck, M.J.); *Harvey v. New York City Police Dep't*, 1997 U.S. Dist. LEXIS 7657, 93 Civ. 7563, 1997 WL 292112 at *2 n.2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' motion, . . . the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims."); *Giovia v. Kiamesha Concord, Inc.*, 1993 U.S. Dist. LEXIS 18225, 92 Civ. 3935, 1993 WL 539530 at *5 (S.D.N.Y. Dec. 23, 1993) (allegations absent from pleadings cannot be considered on a summary judgment motion); *Burke v. Jacoby*, 1991 U.S. Dist. LEXIS 14617, 89 Civ. 1695, 1991 WL 221417 at *5 (S.D.N.Y. Oct. 10, 1991) (refusing to consider allegations omitted from amended complaint on a summary judgment motion), aff'd, 981 F.2d 1372 (2d Cir. 1992), cert. denied, 508 U.S. 909, 113 S. Ct. 2338 (1993); *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F. Supp. 933, 940 n.15 (S.D.N.Y. 1983) (refusing to consider allegation first raised in reply papers, and not suggested in the complaint); *Medical Arts Pharmacy of Stamford, Inc. v. Blue Cross & Blue Shield of Connecticut, Inc.*, 518 F. Supp. 1100, 1109 [*29] (S.D.N.Y.), aff'd, 675 F.2d 502 (2d Cir. 1981).

3. Even if Davila's Alleged Inability to Work Were Properly Pleaded in the Complaint, Defendants Are Entitled to Summary Judgment Based on Davila's Deposition Testimony

Even if Davila's claim that her fibromy algmia interfered with her ability to work were properly pleaded in her complaint (which it was not), defendants still would be entitled to summary judgment, because the admissible evidence on this motion does not demonstrate that Davila was substantially limited in her ability to work.

Davila's complaint admits that she could perform sedentary and clerical work as long as she could stretch once or twice in an eight-hour shift. (Compl. P8.) At her deposition, Davila conceded that her fibromyalgia only caused hesitation for a few seconds and otherwise did not interfere with her ability to work:

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

Page 9

Q. . . . What parts of your job were you unable to perform because of the fibromyalgia?

A. Perform? Well, maybe I was, like when the, when the fingers would cramp up or I was experiencing stiffness, in terms or reaching for something, I might hesitate because I would feel the pain and then reach for it [*30] .

If I was getting up from the desk to go call a client, I may be raising from the seat and feel the stiffness, or like your knees kind of get tight and then you go on into a raised position then I would go, be able to go call the client to bring them back to start the interview.

Q. You said you sometimes would hesitate before you would grab a file, but you were able to grab the file?

A. Eventually, I would be able to pick it up, or the form or the paper that I was reaching for.

Q. How long would this hesitation last? . . . Would you hesitate for a second or would you have to wait five minutes, ten minutes, an hour?

A. Oh, no, no, no, nothing like an hour. Oh, never. Maybe a couple of seconds.

Q. Okay. And what about standing up and sitting down?

A. I may hesitate.

Q. For how long?

A. A couple of seconds. That's why, Mr. Kitzinger, I'm saying that at times. I never really timed it or looked.

Q. But it was a very short period of time?

A. Yes. You feel a pinch or a pain and then you keep moving or you keep going; you know, you feel it internally and then, then you stop.

Q. But you were able to work through it?

A. [*31] Yes.

(Kitzinger 7/13/00 Supp. Aff. Ex. D: Davila Dep. at 63-65, emphasis added.)

In opposition to defendants' summary judgment motion, Davila has submitted opposition papers and affidavits that contradict her prior deposition testimony. Davila now claims that she is unable to work (Davila Br. at 10) and that she has difficulty working due to severe pain, stiffness and muscle spasms (Davila Aff. PP10, 12). Davila claims that she "was having an increasingly difficult time working through the day due to the physical discomfort of headaches, swelling of the hands and feet, sweltering temperatures, sweating, pain in the legs and body stiffness." (Davila Aff. P12.) Davila also submitted affidavits and correspondence from her physicians, claiming that she was unable to work. (See, e.g., Belmont Aff. Ex. D: 9/5/97 Letter ("[Ms. Davila's] condition has disabled her from performing her occupational duties.").)

The Court, however, must disregard affidavits, such as those submitted here by Davila, that contradict the complaint and Davila's deposition testimony. It is black letter law that affidavits which contradict prior deposition testimony are disregarded on a summary judgment [*32] motion. E.g., *Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997)* ("We follow the rule that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'"); see, e.g., *Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999)*, cert. denied, 530 U.S. 1242, 147 L. Ed. 2d 960, 120 S. Ct. 2688 (2000); *Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996)*; *Buttry v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995)*; *Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987)* ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 698 (S.D.N.Y. 1999)* (Wood, D.J. & Peck, M.J.) ("It is black letter law that affidavits which contradict prior deposition testimony are disregarded on a summary judgment motion."); *EEOC v. Johnson & Higgins, Inc., 1998 U.S. Dist. LEXIS 17612, 93 Civ. 5481, 1998 WL 778369 [*33]* at *7 (S.D.N.Y. Nov. 6, 1998)* (Peck, M.J.). n23

n23 See also, e.g., *Cousins v. Howell Corp., 113 F. Supp. 2d 262, 264 & n.2 (D. Conn. 2000)* (plaintiff testified at deposition that, upon returning to work in May 1997, she had fully

Case 3:02-cv-00659-AVC    Document 53    Filed 11/17/2003    Page 16 of 26

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

Page 10

recovered from her surgeries and was not limited in any way, but then submitted affidavit stating that from April 1997 to October 1997, her physical problems precluded her from performing jobs that required significant or strenuous physical duties or jobs that would not permit her prolonged rest periods; "These inconsistencies in plaintiff's testimony need not detain us for a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts that party's previous deposition testimony."); *Sherman v. Peters*, 110 F. Supp. 2d 194, 198 (W.D.N.Y. 2000); *Shields v. Robinson-Van Vuren Associates, Inc.*, 2000 U.S. Dist. LEXIS 6234, 98 Civ. 8785, 2000 WL 565191 at *4 (S.D.N.Y. May 8, 2000); *Needle v. Alling & Cory, Inc.*, 88 F. Supp. 2d 100, 106 (W.D.N.Y. 2000); *Varre v. City of Syracuse*, 2000 U.S. Dist. LEXIS 2688, 96 Civ. 1792, 2000 WL 270966 at *4 (N.D.N.Y. March 6, 2000); *Pomilio v. Wachtell Lipton Rosen & Katz*, 1999 U.S. Dist. LEXIS 53, 97 Civ. 2230, 1999 WL 9843 at *1 n.2 (S.D.N.Y. Jan. 11, 2000); *Nweke v. Prudential Insurance Co.*, 25 F. Supp. 2d 203, 227 (S.D.N.Y. 1998) ("Nweke alleges--for the first time in her June 5, 1998, affidavit in response to summary judgment . . .--that from the date she returned to work on March 2, 1994, to March 24, 1995, when she was discharged, her depression substantially limited her major life activities of sleep, appetite, motivation (including focus and concentration), desire to socialize, and work. Yet her own words assessing her condition in 1994 contradict the assertions of substantial limitation she now makes in affidavit form. The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior testimony.'"); *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 386 n.7 (S.D.N.Y. 1998) (Stein, D.J. & Peck, M.J.); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 860 (S.D.N.Y. 1997) (Sotomayor, D.J.), aff'd mem., 159 F.3d 1348 (2d Cir. 1998); *Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. 458, 471-72 (S.D.N.Y. 1996) (Schwartz, D.J. & Peck M.J.) (citing cases), aff'd, 139 F.3d 98 (2d Cir.), cert. denied, 525 U.S. 826, 119 S. Ct. 73, 142 L. Ed. 2d 57 (1998); *Keiser v. TKR Cable Co.*, 1997 U.S. Dist. LEXIS 23870, 96 Civ. 7697, 1997 WL 811533 at *2 n.2 (S.D.N.Y.Aug. 28, 1997); *Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.*, 1996 U.S. Dist. LEXIS 3822, 94 Civ. 2732, 1996 WL 143903 at *6 (S.D.N.Y. March 29, 1996).

[*34]

In short, because plaintiff Davila's complaint, prepared by counsel, claims only that Davila is limited in her ability to exercise, and because Davila's deposition testimony does not claim any inability to work, her later-submitted affidavits that she is substantially limited in her ability to work cannot be considered.

Thus, based on Davila's deposition description of the way in which fibromyalgia affects her work--brief hesitation for a few seconds and pain that she was able to "work through"--she is not disabled under the ADA. See, e.g., *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) ("moderate limitations on major life activities do not suffice to constitute a 'disability' under the ADA"), cert. denied, 528 U.S. 1078, 145 L. Ed. 2d 670, 120 S. Ct. 794 (2000); *Streifel v. Dakota Boys Ranch Ass'n*, No. 99-1765, 221 F.3d 1344 (table), 2000 WL 559205 at *1 (8th Cir. May 9, 2000) (experiencing pain from walking, climbing, and other activities is only a moderate limitation which does not constitute an ADA disability); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir. 1999) (ability to walk is not significantly [*35] limited simply because plaintiff requires ten-minute hourly breaks when standing or walking and walks with a slight limp); *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir.) (suffering from continuous joint pain is not substantially limiting on the major life activity of working), cert. denied, 528 U.S. 872, 145 L. Ed. 2d 147, 120 S. Ct. 174 (1999); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (walking with a limp and moving at a "significantly slower pace than the average person" does not reach "the level of a substantial impairment"); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (walking with moderate difficulty or pain is not a substantially limiting disability); *Muszak v. Sears, Roebuck & Co.*, 63 F. Supp. 2d 292, 299 (W.D.N.Y. 1999) (plaintiff with lumbar strain was not disabled within meaning of ADA where her back condition presented some difficulties for her in working, but there was no evidence that she was unable to work); *McKenzie v. Target Stores*, 1998 U.S. Dist. LEXIS 10687, No. C.A. 3:95-2787-23, 1998 WL 1048361 at *5 (D.S.C. June 24, 1998) (performing tasks more slowly than [*36] others because of cerebral palsy does not qualify plaintiff as substantially limited in the life activity of working); *Kirkendall v. United Parcel Serv., Inc.*, 964 F. Supp. 106, 110-11 (W.D.N.Y. 1997) (no finding of disability where evidence indicated that plaintiff's back condition was permanent, but it was only a partial and relatively moderate impairment); *Hazeldine v. Beverage Media, Ltd.*, 954 F. Supp. 697, 704 (S.D.N.Y. 1997) ("It is . . . clear that plaintiff's ability to engage in physical activity was sufficient . . . to allow her to carry

Case 3:02-cv-00659-AVC    Document 53    Filed 11/17/2003    Page 17 of 26

Page 11

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

on her daily life: commuting to work every day, shopping for herself, caring for herself, and completing household tasks, albeit with some difficulty. At most, plaintiff must pace herself when engaging in such physical activity by stopping and resting after five city blocks or twenty minutes of exertion; but this degree of limitation is far from the 'substantial' or 'significant' restriction contemplated by the ADA. . . ."); *Aquinas v. Federal Express Corp.*, 940 F. Supp. 73, 77-78 (S.D.N.Y. 1996) (occasionally having trouble lifting packages at work due to considerable pain from fibromyalgia [*37] is not substantially limiting).

In order for Davila to be found substantially limited in the major life activity of working, she must be "unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S. Ct. 2139, 2151, 144 L. Ed. 2d 450 (1999). n24 Accordingly, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, the "ability to work is substantially limited. . . if the plaintiff is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Colwell v. Suffolk County Police Dep't*, 158 F.3d at 643 (quoting 29 C.F.R. 1630.2(j)(3)(i)).

n24 Accord, e.g., *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir. 1999); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998), cert. denied, 526 U.S. 1018, 119 S. Ct. 1253, 143 L. Ed. 2d 350 (1999); *Ryan v. Grae & Rybicki, Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 872 (2d Cir. 1998); *Varre v. Syracuse*, 2000 U.S. Dist. LEXIS 2688, 2000 WL 270966 at *5; *Treglia v. Manlius*, 68 F. Supp. 2d 153, 158 (N.D.N.Y. 1999); *Hoffman v. Town of Southington*, 62 F. Supp. 2d 569, 572 (D. Conn. 1999).

[*38]

Davila contends that she is unable to engage in repetitive motions. "If I'm experiencing a flareup or an exacerbation, repetitive motions, like I might have some difficulty reaching for something or filing; that's, I really can't do that for long periods of time." (Thomas Aff. Ex. 14: Davila Dep. at 62.) A restriction on repetitive motions, however, has been found to not be substantially limiting. See, e.g., *Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 618 (8th Cir. 1997) (restriction from performing jobs that require a significant amount of continuous repetitive motion and heavy lifting does not

render plaintiff disabled); *McKay v. Toyota Motor Mfg., USA, Inc.*, 110 F.3d 369, 372 (6th Cir. 1997) (plaintiff's carpal tunnel syndrome which restricted her from positions requiring repetitive motion or frequent lifting was insufficient to establish that her condition disqualified her from a broad range of jobs); *Zarzycki v. United Tech. Corp.*, 30 F. Supp. 2d 283, 286, 289-293 (D. Conn. 1998) (plaintiff not significantly limited with respect to ability to work where physician restricted plaintiff from, inter alia, repetitive [*39] lifting or bending); *Kirkendall v. United Parcel Serv., Inc.*, 964 F. Supp. at 110-11 (no substantial limitation on any life activity, including ability to work, where doctors had advised plaintiff that repetitive bending and lifting were not good for his back). Davila does not allege, and cannot demonstrate, that she is prevented from performing whole categories of employment. Accordingly, even assuming that Davila suffers from a physical condition that causes her discomfort, pain, and to hesitate while performing certain tasks, she is not disabled within the meaning of the ADA.

Finally, in opposition to summary judgment, Davila's physician, Dr. Belmont, submitted an affidavit which stated the following:

> Although Ms. Davila is "high functioning" under normal circumstances, she is totally unable to work in a "sick building." Normally, she can only perform sedentary and clerical work as long as allowances are made for opportunities for stretching at every 1.5 to 2 hours each day. She is unable to climb stairs, she cannot lift or carry heavy files, sit for long periods of time or perform work on computers due to lack of flexibility in her hands. Where a "sick [*40] building" is present, Ms. Davila cannot even perform sedentary and clerical work.

(Belmont Aff. P8.) Dr. Belmont's elaboration on Davila's condition contradicts Davila's own deposition testimony and thus is not admissible. See cases cited at pages 20-21 & n. 23 above. Even considering Dr. Belmont's affidavit, however, it still does not render Davila disabled under the ADA. An impairment which only restricts a plaintiff from working in a particular location does not satisfy the disability requirement under the ADA. E.g., *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 791 (E.D.N.Y. 1999); see, e.g., *Weber v. Strippit, Inc.*, 186 F.3d at 913 (claiming only to be unable to relocate to a particular location and not to be prevented from working in an entire class or broad range of jobs does not qualify as a disability under the ADA); *Tuten v. Clariant Corp.*, No. 98-1299, 173

Case 3:02-cv-00659-AVC   Document 53   Filed 11/17/2003   Page 18 of 26

Page 12

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

F.3d 852 (table), 1999 WL 137644 at *2 (4th Cir. 1999) (while plaintiff's asthma condition restricts him from working in defendant's building, it does not disqualify him from a range of employment positions); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2d Cir. 1994) [*41] (fumes within hospital blood bank that exacerbated plaintiff's asthma does not substantially limit life activity of working); Gupton v. Virginia, 14 F.3d 203, 205-06 (4th Cir.) (where plaintiff's allergy to tobacco smoke prevented her from working in the particular smoke-filled workplace at issue, court dismissed claim because there was "no evidence that her allergy foreclosed her generally from obtaining jobs in her field"), cert. denied, 513 U.S. 810, 115 S. Ct. 59, 130 L. Ed. 2d 17 (1994). n25

n25 See also, e.g., Nugent v. The Rogosin Instit., 105 F. Supp. 2d 106, 113 (E.D.N.Y. 2000) (asthmatic condition, mainly triggered by allergens at defendant's workplace, does not substantially limit plaintiff's ability to work since she is only limited in working at that particular location); Horvath v. Savage Mfg. Inc., 18 F. Supp. 2d 1296, 1303 (D. Utah 1998) ("It is true that [plaintiff]'s asthma may impair him from painting in the conditions present at [defendant's workplace], but this is insufficient to qualify as a substantial impairment of the major life activity of working under the ADA."); Benson v. Lawrence Livermore Nat'l Lab., 1997 U.S. Dist. LEXIS 16223, No. C95-2746, 1997 WL 651349 at *4-5 (N.D. Cal. Oct. 14, 1997), aff'd mem., 163 F.3d 605 (9th Cir. 1998); Bellom v. Neiman Marcus Group, Inc., 975 F. Supp. 527, 533-34 (S.D.N.Y. 1997); Castro v. Local 1199, 964 F. Supp. 719, 725 (S.D.N.Y. 1997) (plaintiff's asthma that was exacerbated by extreme temperature "did not limit her employment opportunities generally; rather, it only restricted plaintiff's work capabilities in the narrowest sense. . . . Such a minimal limitation does not rise to the level of a disability under the ADA."); Mobley v. Board of Regents, 924 F. Supp. 1179, 1187, vacated on other grounds, 26 F. Supp. 2d 1374 (S. D. Ga. 1996); Huffman v. Ace Elec. Co., 1994 U.S. Dist. LEXIS 15165, Civ. A. No. 94-2030, 1994 WL 583113 at *5 (D. Kan. 1994) (plaintiff who claimed sensitivity to unknown industrial irritants at one particular job does not have a substantial limitation of the major life activity of working).

[*42]

Davila has not presented any admissible evidence as to how many buildings in the New York area are "sick buildings" and thus how many jobs are foreclosed to her by her condition. On the record, Davila's restriction on working in a "sick building" does not constitute a work disability within the meaning of the ADA. n26

n26 Davila also argues that the defendant regarded her as disabled on the basis that it would not allow her to return to work until she could return to work with no restrictions. Her argument is as follows:

The defendant concluded, based on its "no restrictions" policy, that Ms. Davila was incapable of performing any job in the City of New York as long as she had restrictions on her ability to return to duty. The fact that the defendant regarded her as unable to perform any job within the employ of the City of New York, and indeed, would not allow her to return to work with restrictions, at the very least creates a genuine issue of material fact as to whether defendant perceived Ms Davila as unable to perform a class or broad range of jobs.

(Davila Br. at 15.)

Defendant's alleged "no restrictions" policy if applied to an individual who is actually disabled within the meaning of the ADA would constitute an ADA violation. It, however, is not evidence that the City of New York regarded Davila as disabled.

[*43]

III. DAVILA'S NYSHRL DISABILITY CLAIM SHOULD BE DISMISSED WITHOUT PREJUDICE

Davila also claims that her termination violated the New York State Human Rights Law ("NYSHRL"). (Compl. P33; see Davila Br. at 20-23.) While disability discrimination under the ADA and NYSHRL is analyzed similarly, disability is defined more broadly under NYSHRL. See, e.g., Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 233 (2d Cir. 2000); Scott v. Flaghouse, Inc., No. 97-9431, 159 F.3d 1348 (table), 1998 WL 536764 at *2 (2d Cir. July 7, 1998); Reeves v.

*Johnson Controls World Servs., Inc.*, 140 F.3d 144, 154-56 (2d Cir. 1998) (NYSHRL defines a disability more broadly than does the ADA; the NYSHRL does not require the impairment to the plaintiff to identify substantially limited a major life activity); *Vaughnes v. United Parcel Serv., Inc.*, 2000 U.S. Dist. LEXIS 11474, 97 Civ. 5849, 2000 WL 1145400 at *11 (S.D.N.Y.Aug. 14, 2000) ("Although the New York Human Rights Law generally tracks the ADA, . . . the New York statute adopts a broader definition of disability."); *Nugent v. Rogosin Inst.*, 105 F. Supp. 2d 106, 115 (E.D.N.Y. 2000); *Epstein v. Kalvin-Miller Int'l, Inc.*, 100 F. Supp. 2d 222, 229-30 (S.D.N.Y. 2000); [*44] *Menes v. CUNY*, 92 F. Supp. 2d 294, 305 (S.D.N.Y. 2000); *Cole v. Uni-Marts, Inc.*, 88 F. Supp. 2d 67, 74 (E.D.N.Y. 2000). n27

n27 See also, e.g., *Mora v. Danka Office Imaging Co.*, 1999 U.S. Dist. LEXIS 15262, 98 Civ. 4485, 1999 WL 777888 at *5 (S.D.N.Y. Sept. 29, 1999); *Roberts v. New York State Dep't of Correctional Servs.*, 63 F. Supp. 2d 272, 290 (W.D.N.Y. 1999); *Sacay v. Research Foundation of the City University of New York*, 44 F. Supp. 2d 496, 502-03 (E.D.N.Y. 1999) ("'the range of impairments that may potentially qualify as a disability is broader under the NYSHRL . . . and 'covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future'"); *Zuppardo v. Suffolk County Vanderbilt Museum*, 19 F. Supp. 2d 52, 55 (E.D.N.Y. 1998), aff'd mem., 173 F.3d 848 (2d Cir. 1999); *Glowacki v. Buffalo General Hospital*, 2 F. Supp. 2d 346, 353 (W.D.N.Y. 1998); *Glowacki v. Buffalo General Hospital*, 2 F. Supp. 2d 346, 353 (W.D.N.Y. 1998); *Hazeldine v. Beverage Media*, 954 F. Supp. 697, 706 (S.D.N.Y. 1997) ("an individual can be disabled under the [New York] Executive Law if his impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities.").

[*45]

Thus, dismissal of Davila's ADA claim does not automatically lead to dismissal of Davila's NYSHRL claim.

A district court may exercise pendent jurisdiction over state law claims "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff]

would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S. Ct. 614, 618, 98 L. Ed. 2d 720 (1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966)); see also, e.g., *Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. 458, 475 (S.D.N.Y. 1996) (Schwartz, D.J. & Peck, M.J.), aff'd, 139 F.3d 98 (2d Cir.), cert. denied, 525 U.S. 826, 119 S. Ct. 73, 142 L. Ed. 2d 57 (1998). The decision whether to exercise pendent jurisdiction, however, is within the discretion of the district court, which should consider such factors as "judicial economy, convenience, fairness and comity." *Carnegie-Mellon*, 484 U.S. at 349-50, 108 S. Ct. at 618-19. n28

n28 See also, e.g., *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993); *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 221-22 (S.D.N.Y. 2000) (Berman, D.J.); *Berman v. Parco*, 986 F. Supp. 195, 219 (S.D.N.Y. 1997) (Wood, D.J. & Peck, M.J.); *Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. at 475; *In re Towers Fin, Corp. Noteholders Litig.*, 1996 U.S. Dist. LEXIS 13461, 93 Civ. 0810, 1996 WL 393579 at *20 (S.D.N.Y. July 15, 1996) (Knapp, D.J. & Peck, M.J.); *Sheridan v. Jaffe*, 1996 U.S. Dist. LEXIS 8809, 94 Civ. 9344, 1996 WL 345965 at *10 (S.D.N.Y. June 24, 1996) (Knapp, D.J. & Peck, M.J.); *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 584 (S.D.N.Y. 1996) (Knapp, D.J. & Peck, M.J.).

[*46]

When the federal claims are dismissed before trial, the Supreme Court has stated that the District Court ordinarily should decline the exercise of jurisdiction by dismissing the state claims without prejudice. E.g., *Carnegie-Mellon*, 484 U.S. at 350 n.7, 108 S. Ct. at 619 n.7 ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Gibbs*, 383 U.S. at 726, 86 S. Ct. at 1139 ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). n29

n29 See also, e.g., *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d at 221-22; *Berman v. Parco*, 986 F. Supp. at 219; *Buti v. Impressa Perosa*, 935 F. Supp. at 475; *In re*

Case 3:02-cv-00659-AVC     Document 53     Filed 11/17/2003     Page 20 of 26

Page 14

2000 U.S. Dist. LEXIS 17012, *; 12 Am. Disabilities Cas. (BNA) 116

*Towers Fin. Corp. Noteholders Litig., 1996 U.S. Dist. LEXIS 13461, 1996 WL 393579* at *20; *Sheridan v. Jaffe, 1996 U.S. Dist. LEXIS 8809, 1996 WL 345965* at *10; *Shain v. Duff & Phelps Credit Rating Co., 915 F. Supp. 575, 584 (S.D.N.Y. 1996)* (Knapp, D.J. & Peck, M.J.).

[*47]

Thus, I recommend that in the exercise of its discretion, the Court dismiss plaintiff's pendent NYSHRL disability claim without prejudice. See, e.g., *Scott v. Flaghouse, 159 F.3d 1348, 1998 WL 536764* at *3. n30

n30 See also, e.g., *Vaughnes v. United Parcel Serv., Inc., 2000 U.S. Dist. LEXIS 11474, 2000 WL 1145400* at *11 (declining to exercise jurisdiction over NYSHRL claim where ADA claim had been dismissed); *Weixel v. Board. of Educ., 2000 U.S. Dist. LEXIS 11041, 97 Civ. 9367, 2000 WL 1100395* at *8 (S.D.N.Y. Aug. 7, 2000) (same); *Mazza v. Bratton, 108 F. Supp. 2d 167, 177 (S.D.N.Y. 2000)* (same); *Nugent v. Rogosin Inst., 105 F. Supp. 2d at 115* (same); *Nweke v. Prudential Ins. Co., 25 F. Supp. 2d 203, 231 (S.D.N.Y. 1998)* (same); *Ryan v. Grae & Rybicki, No. 96 CV. 3731, 1996 WL 680256* at *7 (E.D.N.Y. Nov. 13, 1996) (same), aff'd, *135 F.3d 867 (2d Cir. 1998)*; *Buckley v. Consolidated Edison Co. of New York, Inc., 934 F. Supp. 104, 106 n.1 (S.D.N.Y. 1996)* (same), aff'd, *155 F.3d 150 (2d Cir. 1998)*; *Wernick v. Federal Reserve Bank, 1995 U.S. Dist. LEXIS 14835, 93 Civ. 2606, 1996 WL 598973* at *2 (S.D.N.Y. Oct. 10, 1995) (same), aff'd, *91 F.3d 379 (2d Cir. 1996)*.

[*48]

CONCLUSION

For the reasons set forth above, defendant should be granted summary judgment on plaintiff Davila's ADA claim, and the Court should dismiss without prejudice plaintiff Davila's NYSHRL discrimination claim.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to *28 U.S.C. § 636(b)(1)* and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993)*, cert. denied, *513 U.S. 822, 115 S. Ct. 86, 130 L. Ed. 2d 38 (1994);* [*49] *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.)*, cert. denied, *506 U.S. 1038, 113 S. Ct. 825, 121 L. Ed. 2d 696 (1992); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1);* Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: New York, New York

    November 20, 2000

    Respectfully submitted,

    **Andrew J. Peck**

    United States Magistrate Judge

2

LEXSEE 2003 U.S. DIST. LEXIS 10002

**JOAN HAREWOOD, Plaintiff, -against- BETH ISRAEL MEDICAL CENTER et al., Defendants.**

**02 Civ. 5511 (HB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 10002*

**June 12, 2003, Decided
June 13, 2003, Filed**

**DISPOSITION:** [*1] Defendants' motion to dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee alleged that defendant employers discriminated against her on the basis of her age and disability. The employers moved to dismiss the former employee's complaint in its entirety.

**OVERVIEW:** The former employee was 57 and began her employment with the employers as a dietary aid almost 40 years earlier. Throughout her employment, she consistently fulfilled the requirements of her position. Because she lacked money, the former employee had not completed a certification program. She later became ill and suffered an aneurysm, which put her in the hospital. The employers eventually terminated her purportedly because she had failed to obtain the requisite certification after the employers warned her nearly two and half years earlier. Prior to termination her supervisor told her to go on permanent disability. The former employee's position was filled by a younger, non-disabled person. The former employee filed a charge with the EEOC alleging age and disability discrimination. The EEOC dismissed the charge and provided her a right to sue letter. The court held under the basis of *42 U.S.C.S. § 12102*(2), the former employee had shown that she was disabled under the Americans with Disabilities Act of 1990 (ADA), *42 U.S.C.S. § 12101* et seq. She also showed she was disabled within the meaning of N.Y. Exec. Law § 290 et

seq. And New York City, N.Y. Admin. Code § 8-101 et seq.

**OUTCOME:** The employers' motion to dismiss was granted-in-part and denied-in-part. Specifically, the former employee's claims for damages arising from conduct prior to a certain date were dismissed. The former employee's retaliation, claims were also dismissed. However, she had 10 days to replead her retaliation claims.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For JOAN HAREWOOD, plaintiff: Saul D. Zabell, Somma, Zabell & Associates, L.L.P., Farmingdale, NY.

**JUDGES:** Harold Baer, Jr., U.S.D.J.

**OPINIONBY:** Harold Baer, Jr.

**OPINION:**

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiff Joan Harewood alleges that defendants Beth Israel Medical Center and Continuum Health Partners, Inc. (collectively "Beth Israel") discriminated against her on the basis of her age and disability. She brings suit for violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), *29 U.S.C. § 621 et seq.,* the Americans with Disabilities Act of 1990

("ADA"), *42 U.S.C. § 12101 et seq.*, the New York State Human Rights law, *Executive Law § 290 et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Defendants move, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("FRCP") to dismiss Harewood's complaint in its [*2] entirety. For the following reasons, defendants' motion to dismiss is granted-in-part and denied-in-part.

## I. MOTION TO DISMISS STANDARD

A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 63 (2d. Cir. 1997)* (citations and internal quotations omitted). In particular, "an employment discrimination complaint... must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)* (quoting *Fed. R. Civ. P. 8(a)(2)*). In ruling on a motion to dismiss, the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)*. It is improper, however, to assume that a litigant can prove facts not alleged. *See Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)*; [*3] *Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 526, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983)*.

## II. FACTUAL BACKGROUND

Harewood is fifty-seven years old and began her employment with defendants as a dietary aid on or about December 1962. Compl. PP 18-19. Throughout the term of her employment with defendants, Harewood consistently fulfilled the requirements of her position. *Id.* PP 20, 23. On or about November 1998, defendants advised Harewood that the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") would be conducting an inspection and that all employees needed to be up to date with their certifications. *Id.* P 26. Defendants "told" Harewood shortly thereafter to enroll in a program to obtain the necessary certification. *Id.* P 27; Pl. Mem. at 2. Because of financial hardships, however, Harewood was unable to attend the first certificate program, which was offered in January 1999. She did not, however, inform anyone of her financial difficulties until after Evelyn Gacula, the Director of Food and Nutrition Services, advised her in April 1999 that she had to obtain a certificate. Compl. [*4] P 30. Prompted by this second notice from

defendants, Harewood contacted the Beth Israel Medical Center Education Department to inquire about obtaining financial aid to enroll in the certification program. *Id.* P 31. Because Harewood had not obtained the necessary certification or enrolled into a certification program by April 1999, Harewood's supervisor, Myrna Mercado, advised her "that she must show proof that she was registered in a certificate program before June of 1999." *Id.* P 32. In response to Harewood's inquiry, Barry Schlossberg, Head of Food and Nutrition Services, told plaintiff to enroll and that defendants would pay the tuition. *Id.* P 35. Harewood, enrolled the following day in the next available certificate program, which commenced in September 1999. *Id.* P 36.

In September 1999, Harewood approached Schlossberg to obtain the promised tuition of $ 200, which Gacula provided to her the following week. *Id.* PP 38-39. After completing the first of the four segments of the certification program, Harewood asked Schlossberg in December 1999 to have defendants cover the tuition for the following semester. *Id.* P 42. Schlossberg said nothing in response to [*5] Harewood's request, and defendants never provided the requested tuition payment, which was required to register for the next segment of the certificate program. *Id.* PP 43-44. Despite failing to complete the remainder of the certificate program, defendants neither warned Harewood again that she needed to be certified nor mentioned anything about the tuition payment that she sought. *Id.* P 45.

Towards the end of October 2000, Harewood became ill and suffered an aneurysm, which put her in the hospital. *Id.* PP 47-48. Before leaving the hospital, Harewood spoke with Gacula, who informed her that she had to work the following weekend. *Id.* P 49. Although defendants knew Harewood had a history of diabetes and heart problems and that returning to work so soon was against her doctor's recommendation, Gacula reiterated that she had to come to work. *Id.* PP 46, 50, 51. Two days after reporting to work, Harewood checked into the hospital with a blood clot, which resulted in her going on disability leave. *Id.* P 52. During this leave, Mercado told Harewood to instruct her doctor to send her back to work the next time she saw him, which was on December 28, 2000. *Id.* PP 55-56. At [*6] the December 28, 2000 appointment, Harewood's doctor hospitalized here due to her diabetes and liver enzyme problems. *Id.* P 57. She remained there until January 24, 2001. *Id.* P 58. Harewood informed Mercado a few months later that although the results of her liver biopsy "were not good," her doctor would permit her to return to work. Harewood attempted returned to work on April 30, 2001, at which time, Mercado advised her to go on permanent disability, and shortly thereafter, on the same day, terminated her employment. *Id.* PP 62-64. According to Harewood,

defendants contend that they terminated her because she had failed to obtain the requisite certification after warning her nearly two and half years before that everyone needed to be certified. *Id.* P 65.

Harewood contends that her position was filled by a younger, non-disabled person, despite the fact that she was able to satisfactorily perform the duties and functions of her position. *Id.* PP 66-67. After defendants terminated her employment, Harewood sent a letter to defendants on June 20, 2001, complaining about the discriminatory treatment she received. *Id.* PP 68. When Harewood subsequently applied [*7] for unemployment insurance benefits, defendants objected to her application for unemployment insurance benefits. *Id.* P 70.

Harewood filed a charge with the EEOC on January 10, 2002, alleging age and disability discrimination. Def. Exh. B. On May 17, 2002, the EEOC dismissed Harewood's charge, finding there was insufficient evidence to substantiate her discrimination claim, and provided her a right to sue letter.

## II. DISCUSSION
### A. CONDUCT BEFORE MARCH 10, 2001

Defendants argue that any alleged discriminatory acts before March 10, 2001 are untimely. Although not entirely clear from the complaint, it appears that plaintiff contends that the discriminatory conduct on the basis of age and disability before March 10, 2001 includes refusing to pay tuition for the certification program that she needed to become certified and insisting she return to work before fully recovering from hospitalization. n1

n1 Even if I were to conclude that claims for recovery against such conduct were not time-barred, in my view, Harewood has not alleged sufficient facts to demonstrate that the conduct before March 10, 2001 was discriminatory in nature.

[*8]

Pursuant to *42 U.S.C. § 12117(a)* of the ADA and *29 U.S.C. § 626(d)(2)* of the ADEA, a charge "shall" be filed within 180 days after the alleged unlawful employment practice takes place, unless the individual has filed charges with the New York State Department of Human Rights ("NYSDHR"), in which case, the charge "shall" be filed within 300 days of the alleged discriminatory conduct. *See Ford v. Fineson, 81 F.3d 304, 307 (2d Cir. 1996); Harris v. City of New York, 186 F.3d 243, 247-48 (2d Cir. 1999).* Harewood argues that the 300 day limitations period should not begin to run

until April 30, 2001, when she was terminated. Defendants do not dispute that Harewood's employment terminated within the 300 day period, but rather, because she filed her EEOC complaint on January 10, 2002, they argue that acts before March 10, 2001 are not actionable because they fall outside the 300 day statutory window. Acts performed before March 10, 2001 are not actionable unless it can be shown that the conduct alleged in the EEOC complaint was part of a single, unlawful employment practice to create a "continuing violation. [*9] " *AMTRAK v. Morgan, 536 U.S. 101, 117-18, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002).* As the United States Supreme Court noted in *National R.R. Passenger Corp. v. Morgan,* the word "shall" in section *2000(e)-5(e)(1)* "makes the act of filing a charge within the specified time mandatory." *536 U.S. at 109.* Here, the only discernible discriminatory conduct charged in the EEOC complaint within the 300 day period is Harewood's termination, which the Supreme Court identified as an example of a "discrete act" *Id. at 114.* "Discrete acts that fall within the statutory time period[, however,] do not make timely acts that fall outside the time period." *Id. at 112.*

Essentially, Harewood seeks to equitably toll the limitations period to preserve her claims of unlawful discriminatory conduct before March 10, 2001. Harewood argues that the limitations period should not begin running until "the date when the employee receives 'definite notice' of the discriminatory act sufficient to make out a prima facie case." Pl. Mem. at 7 (citing *Miller v. International Tel. & Tel. Corp., 755 F.2d 20 (2d Cir 1985),* and that she did [*10] not become aware of the discriminatory nature of defendants' conduct that occurred before March 10, 2001 until she was later terminated on April 30, 2001. Contrary to plaintiff's belief, "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez, 454 U.S. 6, 8, 70 L. Ed. 2d 6, 102 S. Ct. 28 (1981)* (emphasis in original). More specifically, the limitations period "commence[s] upon the employer's commission of the discriminatory act and are not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum, in which event tolling of the time bar might be permitted as a matter of fairness." *Miller, 755 F.2d at 24* (citing *Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978).* Here, Harewood alleges no facts that might show that equitable estoppel applies or that there are extraordinary circumstances that merit [*11] equitably tolling the statute of limitations period. *Cf. id.* ("grounds [for equitable tolling] might exist if the employee could

show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory"). Harewood's discrimination claims based on the alleged conduct before March 10, 2001 are therefore time barred and must be dismissed. *See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984)* ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

## B. FAILURE TO STATE A CLAIM FOR RETALIATION

Defendants contend that Harewood's retaliation claim must fail because she failed to administratively exhaust her retaliation claim through the EEOC. Although not a jurisdictional requirement, it is well settled that an employment retaliation claim generally must be properly raised with the EEOC as a prerequisite to bring the claim into federal court. *See, e.g., Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001); Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000);* [*12] *Miller, 755 F.2d at 23.* Here, Harewood did not indicate that her discrimination claim with the EEOC was based on retaliation, *see* Def. Exh. B (cover page), nor did she allege any facts in her EEOC complaint regarding her view that the opposition by defendants to her application for unemployment benefits was a retaliatory act. *See id.* (Harewood Affid.). The EEOC complaint was filed near the beginning of January 2002, which appears to be months after the alleged retaliatory conduct. Although she did not include the retaliation claim in her EEOC complaint, Harewood avers that it is sufficiently related to the initial charge that it need not have been pleaded to the EEOC. Pl. Mem. at 10 (citing *Butts v. City of New York Dep't of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993)).* The Second Circuit cautioned in *Butts* that the purpose of the notice prerequisite is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Id. at 1401.* The notice provision "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Id.*

The Second [*13] Circuit has enumerated several situations when a claim may be considered "reasonably related," such that the plaintiff may assert the claim in federal court even though it is not pleaded in an EEOC complaint. n2 Here, plaintiff has failed to meet any of the pleading requirements used to circumvent the general requirement that a claim must first be raised with the EEOC before the claim may be asserted in federal court. *Cf. Butts, 990 F.2d at 1402-03.* Additionally, even under

the liberal pleading standard of *Rule 8(a) of the Federal Rules of Civil Procedure,* Harewood's retaliation claim must fail because she does not allege sufficient facts to show that she is entitled to relief. The Second Circuit cautioned that "reasonable defensive measures" may not be a "protected activity," even though such steps are adverse to the charging employee and result in differential treatment." *U.S. v. New York City Transit Authority, 97 F.3d 672, 677 (2d Cir. 1996)* (analyzing Title VII anti-retaliation provision); *see 42 U.S.C. § 12203(a)* (ADA anti-retaliation provision); *29 U.S.C. § 623(c)*(ADEA anti-retaliation provision); [*14] *Manzi v. DiCarlo, 62 F. Supp. 2d 780, 793-94 (E.D.N.Y. 1999)*(noting anti-retaliation provision of Title VII, ADA and ADEA are virtually identical). Alleging that defendants, after receiving Harewood's letter complaining of her alleged discriminatory treatment, opposed her application for unemployment benefits, without more, does not provide a basis upon which relief may be granted. *See Whalley v. Reliance Group Holdings, Inc., 2001 U.S. Dist. LEXIS 427, 2001 WL 55726, at *12 (S.D.N.Y. Jan. 22, 2001)*(granting summary judgment on retaliation claim under ADA). "Employers frequently challenge a former employee's application for unemployment insurance benefits when the employer has terminated the employee for cause." *Roman v. Cornell Univ., 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999).* It is not difficult, however, to assume facts, from which I could infer that the opposition was retaliatory in nature and which would demonstrate the necessary extenuating circumstances to warrant excusing plaintiff's failure to allege the retaliation claim in her EEOC complaint. It would be improper for me, however, to assume facts exist that Harewood has failed to allege. *See Associated Gen., 459 U.S. at 526* [*15] ("it is not ... proper to assume that the [plaintiff] can prove facts that it has not alleged"); *Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001)* ("[A] complaint consisting [only of] naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under *Rule 12(b)(6)*."). Accordingly, Harewood's retaliation claims are dismissed with leave to replead within 10 days of the date hereof.

n2 Although the Second Circuit in *Butts* stated that a district court may only hear claims "included in an EEOC charge or are based on conduct *subsequent* to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge," *Butts, 990 F.2d at 1401* (emphasis added), the Second Circuit later clarified in *Francis v. City of New York,* that the "benefit of the *Butts* 'reasonably related' test is not limited to

plaintiffs alleging post-charge conduct." *235 F.3d 763, 766 (2d Cir. 2000).*

[*16]

## C. FAILURE TO ALLEGE A QUALIFYING DISABILITY

To plead a claim under the ADA upon which Harewood could claim relief, she must, *inter alia,* allege facts showing that she had a disability within the meaning of the ADA. *Weixel v. Board of Educ. of City of New York, 287 F.3d 138, 146-47 (2d Cir. 2002).* Under the ADA, a person with a "disability" means having:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

*42 U.S.C. § 12102(2).* Merely pleading that one has an impairment does not make one disabled for purposes of the ADA. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002).* Harewood contends, in conclusory fashion, that she adequately pleaded a qualifying disability under the ADA, and suggests that any deficiency that may exist in the pleading may be glossed over in view of the liberal pleading standard set by *Rule 8* and the Supreme Court's renouncement in *Swierkiewicz* [*17] of the requirement that a plaintiff plead facts to make out a *prima facie* case of discrimination. Harewood loses sight, however, of a fundamental tenet of *Rule 8,* which requires that the complaint must contain at least, a short plain statement showing that the pleader is *entitled to relief.*

Taking for instance the first of the three possible ways a plaintiff may show she is "disabled" for the purposes of the ADA, *see 42 U.S.C. § 12102(2)(A),* courts apply a three-part test. *Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).* First, the plaintiff must show that she has a "physical impairment" as defined by EEOC regulations. *Colwell, 158 F.3d at 641-42.* The EEOC regulations define a "physical impairment" to be "any physiological disorder ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), *cardiovascular,* reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and *endocrine.*" *29 C.F.R. § 1630.2(h)(1)*(emphasis added); *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002).* [*18] Here,

Harewood alleges that she has heart and diabetes problems, which corresponds to a cardiovascular and endocrine disorder, respectively. Harewood's health problems may therefore be classified as an "impairment" under the ADA.

Second, the plaintiff must plead facts showing that the alleged impairments affect one or more "major" life activities under the *ADA. Colwell, 158 F.3d at 642.* Harewood fails to allege, however, what major life activities, if any, are hindered by her impairment. And third, the plaintiff must plead facts showing that the impairment "substantially limits" the major life activity identified by her. *Id. at 643.* Even if I assumed that Harewood had identified a major life activity that was hindered by her condition, she does not make any showing that her impairments "substantially limited" her ability to engage in such activity. Accordingly, Harewood has not alleged facts needed to show she is disabled within the meaning of the ADA under *§ 12102(2)(A).*

As to the second way a plaintiff may prove she is disabled for purposes of the ADA, *see 42 U.S.C. § 12102(2)(B),* she must show that she "has a record [*19] of such impairment." According to EEOC regulations, "*has a record of such impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *29 C.FR. § 1630.2(k)* (emphasis in original). As discussed above, however, Harewood has failed to allege sufficient facts to show that she has, much less has been misclassified as having, a physical impairment that substantially limits a major life activity. Further, she has failed to make any showing that she has a history of such impairment. Accordingly, Harewood has not alleged anything from which I could infer that she is disabled within the meaning of *§ 12102(2)(B).*

In the absence of factual allegations showing that Harewood is disabled within the meaning of the ADA, I can not sustain her ADA claim without improperly assuming facts that are not alleged. It is only under the last basis of *§ 12102(2)* that Harewood has shown that she is disabled under the ADA. *See 42 U.S.C. § 12102(2)(C).* "There are two ... ways in which individuals may fall within this statutory definition: (1) [*20] a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999).* In *Sutton,* the Supreme Court explained that: