FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| LINDA UNGERLEIDER,<br>　　PLAINTIFF | : |
| VS | :     CIVIL ACTION NO.<br>　　302cv659(AVC) |
| | : |
| FLEET MORTGAGE GROUP OF<br>FLEET BANK,<br>　　DEFENDANT | :　　FEBRUARY 25, 2004 |

### MEMORANDUM OF LAW IN OPPOSITION TO
### MOTION FOR SUMMARY JUDGMENT

This memorandum sets forth the plaintiff's opposition to the points raised in the defendant's motion for summary judgment. First of all, contrary to defendant's assertion there are numerous facts in dispute.

Prior to going out on disability leave, plaintiff received excellent job evaluations. She was given awards for top performance and received commendations for her good work. Her personnel file contains no customer complaints and branch managers she worked with did not record any problems with her. No adverse job actions were taken until plaintiff returned from disability leave. After she returned the first time, 2 branches were taken from her, resulting in a loss of income. But when she returned from her second Family Medical leave on April 10, 2000, the retaliation began in earnest.

On the day of her return, she was given a "council" which purported to dredge up problems which had occurred 2 years before. These issues could have been raised in the annual or quarterly reviews for those years, but they were never mentioned. Plaintiff and her doctor requested the accommodation of a personal computer at her desk, but it never materialized. Whether a home office could have been feasible, or was plaintiff's debarment from the Orange office an adverse job action are questions which should be decided by a jury. Whether a reasonable person would have continued working under the conditions forced on plaintiff is not a question which should be decided at the summary judgment stage.

 Rather than accommodate plaintiff, defendant did everything it could to make it impossible for plaintiff to be a productive worker. She was not supposed to go to what had formerly been her main office, and she had no computer she could use. Since she did not have a phone line to Fleet at home a home office was not workable. Her request to work under a different supervisor was ignored. Unexplained withdrawals were made from her personal bank account and commissions were not deposited in a timely manner. The staff at the Orange office prevented her family from doing their personal banking and made it difficult for her to remove her belongings. All of this created a hostile work environment. Fox v. General Motors Corp., 247 F. 3d 169 (4th Cir., 2001).

It has been held that a total set of circumstances may lead to a claim for constructive discharge. By themselves, many of BAE's acts would not rise to the level necessary to show that management deliberately created intolerable work conditions for Interdonato. A reasonable jury, however, could conclude, based on the totality of BAE's actions and inactions, in conjunction with the evidence that BAE intended to terminate Interdonato, that the company deliberately created an intolerable work environment in which a reasonable person in Interdonato's shoes would have felt compelled to resign. Interdonato v.BAE Systems Case No. 00-9114 (2nd Cir. 2000).

It is well settled that for purposes of summary judgment Courts need only decide if questions of fact exist; they should not resolve them. Any ambiguities should be viewed in the light most favorable to the plaintiff non-moving party.

It has been held that court should be chary in granting in summary judgment in discrimination cases. Where an employer's intent is at issue, courts should be reluctant to grant summary judgment. Gallo v. Prudential Res. Serv. 22 F. 3d at 1224./1219 (2nd Cir., 1994)

A fact is defined in Webster's Dictionary Encyclopedic Edition (Lexicon Publications, Inc., 1988) as "a thing know to be true". Many of the paragraphs in defendant's Local Rule 56(c)?1 Statement are not facts. For example: Paragraph 63, is admittedly Moran's "viewpoint". Paragraph 64 is an opinion of someone who is not in the payroll department relating to whether or not plaintiff suffered financial loss. Many paragraphs such as 66, contain too many thoughts so that it is impossible to respond adequately.

3

The citation to Paragraph 69 is to plaintiff's deposition but she could really only give her opinion since she, being his subordinate, would not necessarily know what Moran did. Paragraph 70 is total hearsay. Paragraph 82 also contains conclusions and unsubstantiated hearsay.

In instances such as Par. 89, a reading of the deposition does not support the assertion made in the 56(a)1 statement.

It is undisputed that plaintiff sought reasonable accommodation. Courts have held that: "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the Americans with Disabilities Act to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." Humphrey v. Memorial Hospital Assocs., 239 F. 3d 1128 (9th Cir., 2001). Defendant never sough any kind of interaction. It never sought clarification of the needs of plaintiff, provided alternate suggestions or arranged meetings to discuss the situation. As the Court stated in Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130 (7th Cir., 1996):

> Neither the ADA nor the regulations assign responsibility for when
> the interactive process fails. No hard and fast rule will suffice because
> neither party should be able to cause a breakdown in the process for the
> purpose of either avoiding or inflicting liability. Rather, courts should
> look for signs of failure to participate in good faith or failure by one of
> the parties to make reasonable efforts to help the other party determine
> what specific accommodations are necessary. A party that fails to
> communicate, by way of initiation or response, may also be acting in bad
> faith. In essence, courts should attempt to isolate the cause of the break-
> down and then assign responsibility. For example, the cause of the break-
> down might be missing information. The regulations envision such a cause:

4

> [I]n some instances neither the individual requesting the accommodation nor the employer can readily identify the appropriate accommodation. For example, the individual needing the accommodation may not know enough about the equipment used by the employer or the exact nature of the work site to suggest an appropriate accommodation. likewise, the employer may not know enough about the individual's disability or the limitations that the disability would impose on the performance of the job to suggest an appropriate accommodation.
>
> 29 C.F.R.pt. 1630, app. Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information maybe the cause of the breakdown and the party withholding the information may be found to have obstructed the process. The determination must be made in light of the circumstances surrounding the given case.

Where Defendant never engaged in the interactive process to determine what accommodations were appropriate, it should be held responsible for the breakdown.

Clearly defendant failed in its duty to attempt to accommodate plaintiff, and should be held liable.

No negative actions were taken against plaintiff until after she returned from her disability leave.

Defendant contends that the "performance issues" predated and were unrelated to disability and religion. However, there were no performance issues before she went out on disability. Her ratings were all satisfactory or above and she was a top producer. No complaints were in her file and no adverse job actions were taken against her until she returned from her leaves.

5

Defendant would like this court to find that plaintiff did not exhaust her administrative remedies because she did not check the box for constructive discharge when she filed her complaint with the CHRO. However, her actual affidavit asserted the claim as follows:

"Immediately upon my return I was traumatized between work, the company's attitude and the behavior of my supervisor who did everything in their power to use my disability to drive me out of the company. This was a job that I loved and for which I enjoyed getting up and going to work each and every day.

I had never felt so beaten and frustrated and ill and yet did not want to quit the job. I even asked if I could report to the only other manager in Connecticut which is much further from my home but the harassment became so unbearable to myself and my family that I had to resign last week. Resign from a company where I reached a vested position, top producer status, and the chance for continued success.

The FMLA's "anti-retaliation" provisions provide in relevant part, that: (1) "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter, "[29 U.S.C. S2615(a)(2)] and (2) "It shall be unlawful for any employer to interfere with, restrain, a deny the exercise of, or the attempt to exercise any right provided in this chapter". 29 U.S.C. s2615(A)(1).

6

Linda Ungerlieder alleges that FMG retaliated against her because she took a medical leave of absence pursuant to the FMLA. Claims under the FMLA generally must be brought within two years of the alleged actual event. 29 U.S.C. s2617(C)(1). However, when the conduct alleged constitutes a "willful" violation of the FMLA, the statute of limitations increases to three years. 29 U.S.C. s2617(C)(2).

The plaintiff has alleged that she was constructively discharged on May 24, 2000, that the defendant subjected her to several adverse employment actions after she returned from medical leave on April 10, 2000 through May 24, 2000 and that the defendant willfully violated the FMLA. The plaintiff filed an Amended Complaint on April 9, 2003 which was within the three year statute of limitations period for a claim for a willful violation of the FMLA.

The defendant argues that the plaintiff's claim is time barred and that she cannot establish retaliation as a matter of law because: (1) the amended complaint does not allege that FMG knew or showed reckless disregard as to whether its conduct violated the FMLA, (2) the plaintiff was purportedly provided with more leave time than is required under the FMLA and there is no evidence to suggest she was not restored to her position upon her return, (3) as many as five employees reporting to Mr. Moran may have taken FMLA leaves and none of them were subjected to any adverse action, and (4) the evidence plaintiff cited to support her claim that she was retaliated against for taking FMLA leave is identical to that cited to support her claim of disability discrimination. Defendant's Memorandum of Law at 35-36.

7

When interpreting FMLA's remedial provisions, courts have looked to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. S201, et seq. ("FLSA") for guidance. See Palma v. Pharmedica Communications, Inc., 2003 U.S. Dis. LEXIS 21227, at 3 (D. Conn., Sept. 30, 2003) (quoting Frizzell v. Southwest Motor Freight, 154 F. 3d 641, 644 (6th Cir.,1988) and Nero v. Industrial Molding Corp. 167 F. 3d 921, 928 (5th Cir., 1999)). In interpreting the meaning of the term "willful" under the FLSA, the Supreme Court stated in McLaughlin v. Richland Shoe Co., 486 U.S. 178 (1988) that "[i]f an employer acts reasonably in determining its legal obligation its actions cannot be deemed willful...If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ...it should not be...considered [willful] Id at 135 n. 13. In Hazen Paper Co v. Giggins, 507 U.S. 604(1993), the Supreme Court elaborated that while the term "willful" has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.". Id. at 615 (quoting McLaughlin, 486 U.S. at 133).

In her Amended Complaint, the plaintiff alleged that "The defendant intentionally and willfully violated the FMLA". (Amended Complaint, Par. 57). If the defendant intentionally and willfully violated the FMLA, then, by definition, it could not have negligently done so. Rather, under McLaughlin, the defendant could only have willfully violated the FMLA if FMG knew or showed a reckless disregard for whether its conduct violated the FMLA.

8

When a plaintiff has already alleged that an employer willfully violated the FMLA, there is no need to add the redundant phrase that describes what willfully violating the FMLA means. In <u>Swierkiewicz v. Sorema</u>, N.A. 534 U.S. 506 (2003), the Supreme Court recently clarified that, under the simplified notice pleading standards under Fed. R. Cir. P. 8(a)(2), the complaint: (1) only needs to contain "a short and plain statement of the claim showing that the pleader is entitled to relief", and (2) is only required to "give the defendant fair notice as to what the plaintiff's claim is and the grounds upon which it rests." <u>Id.</u> at 512 (citations omitted). The plaintiff in this case already met those requirements when she said in her Amended Complaint that the defendant willfully violated the FMLA.

The second argument made by the defendant is that the plaintiff was provided more leave than is necessary under the FMLA and there is no evidence to suggest that she was not returned to her position when she returned to work. Even if that is true, it would not mean that the plaintiff would be precluded, as a matter of law, from showing that the defendant retaliated against her because she had exercised her rights under the FMLA by taking FMLA leave.

9

According to the defendant, as many as five employees reporting to Mr. Moran took FMLA leave and were not subjected to adverse employment action. However, the issue in this case will only be whether Linda Underleider was subjected to adverse employment action because she took FMLA leave. While testimony related to Mr. Moran's treatment of other employees he supervised who took FMLA leave may be relevant before a jury, it does not mean that as a matter of law, Ms. Ungerleider cannot prove that Mr. Moran retaliated against her because she took FMLA leave.

The defendant's fourth and final argument is that the evidence upon which she is relying to support her FMLA retaliation claim is identical to that cited to support her disability discrimination claim. However, plaintiff, in an employment discrimination case can argue that the same conduct by the employer violates more than one employment statute. The defendant's elaborate that, for the reasons set forth at pages 31-34 of its Memorandum of Law, the plaintiff's FMLA retaliation claim must be dismissed as a matter of law. However, for the corresponding reasons set forth in pages 1 through 12 of the plaintiff's Memorandum of Law, there is a question of fact as to whether the plaintiff was retaliated against because she took FMLA leave.

10

There clearly is a temporal proximity between the FMLA leave and the adverse employment acts to which she was subjected on or after April 10, 2000, including (a) the progressive discipline she received on the day she returned from the medical leave on April 10, 2000 (Amended Complaint Par. 34); (2) removing her as Loan Officer at the Orange, CT Fleet Bank branch on the day she returned from medical leave on April 10, 2000 (Amended Complaint Par. 35); (3) reducing her pay after she returned from medical leave (Amended Complaint par. 36); (4) being continually berated and harassed by Mr. Moran after April 10, 2000 (Amended Complaint Par. 37) and (5) repeatedly refusing after April 10, 2000 to make the accommodations her physician had requested without providing her with any explanation for its refusal. (Amended Complaint Par 38).

The defendant's Motion to Dismiss the FMLA retaliation claim should be denied.

For the foregoing reasons the plaintiff requests that the defendant's motion for summary judgment be denied.

THE PLAINTIFF

BY /s/
ELLEN M. TELKER
564 Boston Post Road
Milford, CT 06460
Fed. Bar No. 10780
Tel: 203-877-4108 Fax: 203-878-2084

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this _____ day of February, 2004 via first class mail postage pre-paid to:

Beverly W. Garofalo, Esq., Brown Raysman Millstein Felder & Steiner, City Place II, 185 Asylum Street, Hartford, CT 06103.

_____
ELLEN M. TELKER